# 𝔖taunton

## SEABOARD AIR LINE RAILROAD COMPANY v. RICHMOND-PETERSBURG TURNPIKE AUTHORITY.

September 8, 1961.

Record No. 5288.

Present, All the Justices.

The opinion states the case.

*Harry Frazier, III* (*Eppa Hunton, IV; Hunton, Williams, Gay, Powell & Gibson,* on brief), for the appellant.

*Walter E. Rogers* (*Williams, Mullen, Pollard & Rogers,* on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

Seaboard Air Line Railroad Company, referred to herein as Railroad, brought this suit in equity for a mandatory injunction requiring Richmond-Petersburg Turnpike Authority, referred to herein as Authority, to abate and discontinue the nuisance described in the bill, and for the recovery of losses and damages. The trial court sustained a demurrer and, after Railroad declined to amend, dismissed the bill, and Railroad has appealed.

The bill made these allegations:

The Authority, a political subdivision of the Commonwealth created by Acts of the General Assembly, constructed and is now operating and maintaining a highway or turnpike from north of Richmond to south of Petersburg, upon a route which affected properties of the Railroad. Authority entered into negotiations with Railroad to acquire certain easements and air rights necessary to the construction, operation and maintenance of overhead bridges and viaducts over Railroad's property which resulted in a written agreement dated April 19, 1957, in which Railroad agreed to convey to Authority the easements and air rights requested. Said agreement contained this paragraph:

"15. The Authority shall indemnify and save harmless the Railroad from and on account of any liability, damage, loss or injury occasioned to the Railroad, its employees or property, or persons or property upon the premises of the Railroad, and for which or to whom the Railroad may or shall be held responsible in damages due to, arising out of, or happening in connection with the operation, use, and maintenance of the Bridge Facilities, including drainage thereof and objects

of any kind that may fall or be thrown therefrom onto the premises of the Railroad."

Pursuant to the agreement Railroad conveyed to Authority, by deed dated December 19, 1957, "the perpetual easements and air rights necessary and proper for construction, operation, maintenance, repair and renewal" of Authority's James River Bridge over and upon a parcel, among others, formerly used by Railroad in connection with its Main Street station in Richmond.

In paragraph 1 of said deed Railroad reserved "unrestricted and exclusive use and control of the lands and facilities thereon underneath the said bridge and the airspace above it for the use of same to the fullest extent not detrimental to the use of said bridge for highway purposes."

In paragraph 2 thereof it reserved the further right, subject to the approval of the Authority's chief engineer, to attach to the under portions of said bridge, and to construct, operate and maintain in the airspace above the bridge, such signal devices, electric and communication wire and signal lines as requisite or useful in operating its railroad and facilities, but in a manner not detrimental to the use of the bridge for highway purposes; and the Authority agreed to be bound by and to perform every agreement and covenant of said agreement of April 19, 1957.

Pursuant to the terms of the said instruments Authority has constructed across the described parcel of land a concrete viaduct forming part of its James River Bridge and carrying said turnpike.

By an agreement dated July 9, 1958, Railroad leased the land under the viaduct to a lessee for parking purposes.

The viaduct, the bill alleges, was constructed in such manner and of such design and materials that it has attracted large numbers of pigeons which have nested and roosted thereon, and their droppings constitute a nuisance and have rendered parts of the leased premises unfit for parking purposes. The lessee has deducted from the rent the amount of damages to paint on parked automobiles and refuses to renew the lease unless there is a reduction of the rent on account of the nuisance, and the value of the demised premises has been materially reduced by the nuisance; and, further, the nesting and roosting of the pigeons interferes with and obstructs the right of Railroad to attach signal devices, etc., as reserved in paragraph 2 of the deed, *supra*.

Railroad notified the Authority of the facts alleged and called on it to abate the nuisance and reimburse it for its loss and damage, but

Authority denied all responsibility therefor. The maintaining of said nuisance, the bill continues, has caused and will cause Railroad great and irreparable injury, the damages from which would be impossible of ascertainment, and it has no adequate remedy at law.

The demurrer asserted that the bill sets forth no grounds for equitable relief and that no responsibility rested upon the Authority for the condition complained of.

In sustaining the demurrer the trial court wrote that it found "nothing in the agreement between the parties controlling the issue presented by the demurrer * *. As for the general law, no authority has been cited in support of the complainant's theory, nor have I been able to find any. On the contrary, the law seems to be clearly settled the other way." The court then cited a number of authorities to the effect that pigeons are *ferae naturae* and in that state their activities create no liability. "* * [A] private person could not be held liable for the trespasses of animals which are *ferae naturae*, and which have not been reduced to possession, but which exist in a state of nature." *Sickman* v. *United States*, 7 Cir., 184 F. 2d 616, 618. 3 C. J. S., Animals, § 183, p. 1290, § 6a., p. 1088.

Moreover, Railroad sets forth in its bill that in its deed to Authority it reserved to itself the unrestricted use and control of the land and facilities underneath the bridge and the airspace above it. As said in its brief, Railroad did not convey a fee simple estate. It "reserved the full use of everything not inconsistent with Authority's bridge structure." It "retained exclusive use of the land beneath the bridge."

"* * [A]t the present day it is well settled that the owner of land has the exclusive right, inherent in him by reason of his ownership of the soil [*ratione soli*], to take the wild animals to be found there," subject to the State's right of regulation and preservation for the public use. 2 Am. Jur., Animals, § 12, p. 699. 3 C. J. S., Animals, § 6b., p. 1088.

Under the general law, therefore, responsibility with respect to the pigeons would not rest upon the Authority.

However, says the Railroad, all of this is beside the point, because it is not now contending, and has never contended, that Authority is responsible for damages from pigeons under the general law, and that the only question presented on this appeal is whether damage from pigeons is within the scope of paragraph 15, the indemnity provision quoted above, of the agreement of April 19, 1957.

That such is the only question presented by Railroad in its bill of complaint is much less apparent from the bill than from the brief.

The argument of Railroad with respect to the indemnity provision is that it should be construed to give effect to the intention of the parties; that the surrounding circumstances point to its broad scope, and that its coverage is not restricted by concepts of negligence or causation but provides full protection from any and all damage.

"The general rules which govern the construction and interpretation of other contracts apply in construing a contract of indemnity and in determining the rights and liabilities of the parties thereunder." 42 C. J. S., Indemnity, § 8a., p. 574.

It is the duty of the court to construe the contract made between the parties, not to make a contract for them, and "The polestar for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used." Ames* v. *American Nat'l Bank,* 163 Va. 1, 38, 176 S. E. 204, 216. The facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the interpretation of the words used, but not to put a construction on the words the parties have used which they do not properly bear. "It is the court's duty to declare what the *instrument itself* says it says." 163 Va. at 38, 176 S. E. at 216.

Nothing is alleged in Railroad's bill of complaint that requires or warrants giving to the words and phrases of paragraph 15 of the agreement of the parties a meaning and effect different from their normal and usual meaning and effect.

The agreement of the Authority in paragraph 15 quoted above is that it will be responsible for any liability, damage, loss or injury "due to, arising out of, or happening in connection with the operation, use, and maintenance" of the bridge facilities, including drainage "and objects of any kind that may fall or be thrown therefrom onto the premises of the Railroad."

The parties agree that this coverage is not restricted to damage caused by negligent acts of Authority. But Railroad contends that Authority's undertaking includes any liability, damage, loss or injury "without reference to cause." We do not find sufficient support for that contention in the wording of the agreement or in the authorities relied on by Railroad, which differ from the present case in their facts.*

---

* Including *New York Water Serv. Corp.* v. *Village of Marcellus,* 133 N.Y.S. 2d 72 (indemnity against damage "in any way resulting from the installation, presence, operation or defectiveness" of equipment); *Alabama Great So. R. Co.* v. *Louisville & Nashville R. Co.,* 5 Cir., 224 F. 2d 1 (indemnity against loss or damage in the

By the express terms of the indemnity agreement in the present case the liability assumed by Authority must be related to and limited by specific causes. It must be due to, arise out of, or happen in connection with "the operation, use, and maintenance" of the bridge. Railroad argues that it "sought protection against every form of damage to itself and liability to others from the operation of Authority's bridge." But the roosting pigeons were not part of the operation of this bridge. The damage for which the Authority made itself responsible is limited to damage which can be related to the use, operation and maintenance of the bridge. These words, in their common meaning and understanding, refer to the uses to which the bridge is or may be put by people or the agencies of people, not by wild fowl or animals seeking its protection from man or the elements. If it had been the purpose of the parties to indemnify the Railroad against every form of damage that could be related to the presence of the bridge on the Railroad's property, it is improbable that they would have chosen words that expressly limited such damage to the operation, use and maintenance of the bridge.

The liability of the Authority now claimed to exist under the agreement arises out of something for which Authority is concededly not responsible under the general law and which, in fact, would be the responsibility of the Railroad as the owner of the land. Had it been intended to change this around, and to make the Authority responsible for all damage which could be related to the existence of the bridge, that could readily have been accomplished by using a few simple words to express that broad purpose. Instead, the words selected limit responsibility to damages which can be related not to the presence of the bridge but to its operation, use and maintenance, broadened only to include drainage and objects that may fall or be thrown from it. What was in the contemplation of the parties must be ascertained from what they said by the words they used. As

detour of trains "in whatever manner the same may be caused or occasioned"); *Indemnity Ins. Co.* v. *Koontz-Wagner Elec. Co.*, 7 Cir., 233 F. 2d 380 (indemnity against all liability for injury or damage to any person "growing out of the performance of the contract," whether due to the negligence of the indemnitee or otherwise); *Ellis Park Stone Co.* v. *Iowa Ry. & Light Co.*, 204 Iowa 1325, 217 N. W. 262 (indemnity against "any damages of any kind, nature and description arising from the operation" of a dam); *Princemont Const. Corp.* v. *Baltimore & Ohio R. Co.*, D.C. Mun. App., 131 A. 2d 877 (indemnity to the railroad against all damage "in connection with or growing out of the use of said premises" of the railroad by a portable cement unloader of the construction company held to include damage due to the railroad's negligence). Also see *Cacey* v. *Virginian Ry. Co.*, 4 Cir., 85 F. 2d 976.

written, the indemnity provided for by paragraph 15 of the agreement does not render Authority liable for the damage done by the pigeons.

The decree appealed from is accordingly

*Affirmed.*