## Richmond

GOLDMAN PAPER STOCK COMPANY v. RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY.

October 11, 1971.

Record No. 7608.

Present, All the Justices.

*William R. Cogar* (*Mays, Valentine, Davenport & Moore,* on brief), for plaintiff in error.

*Edward A. Marks, Jr.* (*Sands, Anderson, Marks & Clarke,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Richmond, Fredericksburg & Potomac Railroad Company brought this law action against Goldman Paper Stock Company for damages alleged to be payable under an indemnity provision of a lease agreement. At the trial of the case, the lower court held that Goldman was liable to the Railroad as a matter of law under the indemnity provision and submitted to the jury the issue of damages alone. A verdict for the Railroad in the amount of $13,150.06 was returned upon which judgment was entered. We granted Goldman a writ of error.

There is no material conflict in the evidence. On December 19, 1966, Goldman leased Building 45, known as the "old Boiler & Blacksmith Shop", from the Railroad "for the purpose of waste material business". Building 45 was situated in Bryan Park Industrial Area of Henrico County.

The lease was from month to month, terminable by either party upon 30 days prior written notice to the other. Paragraph 4 of the lease agreement provided as follows:

"4. *That Lessee hereby covenants and agrees to reimburse Lessor upon its demand for any and all damages, costs and expenses, including attorney's fees, which Lessor may sustain as a result of the said use of the said premises* and to release, idemnify and save harmless Lessor (a) from any and all damages and costs, including attorney's fees, resulting from injury to or death of Lessee's officers, agents, representatives and employees while on said premises of Lessor, and all damages to Lessee's property or property of Lessee's officers, agents, representatives and employees placed on said premises of Lessor, and *(b) from and against all liability and costs, including attorneys' fees, for injury to or death of persons and damage to property caused by, resulting from or in any manner connected with or arising out of said use by Lessee of said premises.*" [1] (*Emphasis added.*)

Building 45 was of steel framework, open bay construction, covered on sides and roof with metal. It had a dirt floor and contained no interior partitions.

Incident to the use of Building 45 for its waste material business, Goldman stored therein a substantial quantity of scrap paper which was in the building on March 15, 1967, when a fire of unknown origin ignited the contents. Heat from the fire caused the metal framework of the building to collapse and rendered it valueless except for salvage.

The fire also destroyed an adjoining building designated as Building 25, in which paper had been stored by Goldman. There was no lease agreement as to this building.

Of Goldman's various assignments of error we find it necessary to consider only the first, that the lower court erred in holding that the

---

[1] The Railroad bases its claim upon the italicized language at the beginning of the paragraph. Clause 4(b) will be commented on hereafter.

lease agreement of December 19, 1966, required Goldman to indemnify the Railroad for the loss it suffered on March 15, 1967.

Goldman relies heavily on *Seaboard Air Line Railway Company v. Richmond-Petersburg Turnpike Authority*, 202 Va. 1029, 121 S.E.2d 499 (1961) as controlling authority for its contention that the Railroad is not entitled to indemnity under the lease. The lower court held that *Seaboard* was distinguishable, that storage of paper was a use of Building 45 within the meaning of the indemnity provision and that the damage to Buildings 45 and 25 resulted from that use.

In *Seaboard*, the Authority, pursuant to the terms of an agreement with and conveyance from Seaboard, constructed a bridge viaduct as a part of its turnpike over a portion of Seaboard's lands. Seaboard alleged that the viaduct, because of its construction, attracted large numbers of pigeons which roosted thereon and, by their droppings, constituted a nuisance and rendered land under the viaduct leased for parking unfit for that purpose. Seaboard filed its bill against the Authority seeking abatement of the nuisance and damages under the following paragraph of their agreement:

> "15. The Authority shall indemnify and save harmless the Railroad from and on account of any liability, damage, loss or injury occasioned to the Railroad, its employees or property, or persons or property upon the premises of the Railroad, and for which or to whom the Railroad may or shall be held responsible in damages due to, arising out of, or happening in connection with the operation, use and maintenance of the Bridge Facilities including drainage thereof and objects of any kind that may fall or be thrown therefrom onto the premises of the Railroad."

The lower court sustained Authority's demurrer to the bill and we affirmed this action on appeal, commenting upon the indemnity coverage as follows:

> "By the express terms of the indemnity agreement in the present case the liability assumed by Authority must be related to and limited by specific causes. It must be due to, arise out of, or happen in connection with 'the operation, use, and maintenance' of the bridge. Railroad argues that it 'sought protection against every form of damage to itself and liability to others from the operation

of Authority's bridge.' But the roosting pigeons were not part of the operation of this bridge . . . . If it had been the purpose of the parties to indemnify the Railroad against every form of damage that could be related to the presence of the bridge on the Railroad's property, it is improbable that they would have chosen words that expressly limited such damage to the operation, use and maintenance of the bridge." 202 Va. at 1034, 121 S.E.2d at 503-04.

The fact that *Seaboard* is distinguishable from the present case does not lead to the result reached by the lower court. There is a significant difference in the contractural language controlling the disposition of the two cases. The indemnity provision here relied upon by the Railroad, being far more restrictive in its language than the indemnity provision in *Seaboard,* is not broad enough to include damages arising "in connection with" Goldman's use of Building 45.

We find no ambiguity in the Goldman lease requiring us to resort to extraneous evidence to determine the meaning of the words used therein. Under its terms the Railroad is entitled to reimbursement only for damages sustained "as a result of" Goldman's use of the demised premises. Contrasted with this language is the more comprehensive wording of clause 4(b) of the lease agreement,[2] not applicable here, which more nearly approaches the language of the *Seaboard* indemnity clause. Reading the indemnity provision of the Goldman lease as a whole, it is apparent that a much closer causal connection was intended by the words "as a result of" than was required by the language in *Seaboard* or in clause 4(b) of the Goldman lease. *See Turner Construction Company* v. *Belmont Iron Works,* 158 F. Supp. 309 (E.D. Pa. 1957).

The cases cited by the Railroad in support of its position all involved indemnity agreements with broader language than that with which we are concerned. *E.g., Jacksonville Terminal Company* v. *Railway Express Agency, Inc.,* 296 F.2d 256 (5th Cir. 1962) (". . . arising by reason of or in connection with occupation and use of the premises . . . .")

In *Seaboard,* the damage was caused by pigeons which we held were not "related to" the use, operation or maintenance of the bridge viaduct. Here, the damage was caused by fire but the cause of the fire was unknown. Hence, the use of Building 45 did not cause the fire although the use determined the extent of damage resulting from

[2] See n. 1, *supra.*

the fire. The fire was not a use within the meaning of the agreement. If the Railroad intended to shift the risk of loss from fire damage to the tenant it should have used the language required to do so.

We conclude that the Railroad is not entitled, under the indemnity provisions of its lease agreement, to recover damages from Goldman resulting from the fire on March 15, 1967. Accordingly, the judgment entered by the lower court upon the verdict for the Railroad will be reversed and judgment will be entered for Goldman.

*Reversed and final judgment.*