937 F.2d 602
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CARPENTER INSULATION & COATINGS COMPANY, Plaintiff-Appellee,
v.
STATEWIDE SHEET METAL & ROOFING, INCORPORATED, a North
Carolina corporation, Defendant-Appellant.
CARPENTER INSULATION & COATINGS COMPANY, Plaintiff-Appellee,
v.
STATEWIDE SHEET METAL & ROOFING, INCORPORATED, a North
Carolina corporation, Defendant-Appellant.
 Nos. 90-2426, 90-2471.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided July 9, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-90-247-R)
 Henry M. Massie, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., (Argued), for appellant; Robert B. Delano, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., on brief.
 Christopher C. Spencer, McGuire, Woods, Battle & Boothe, Richmond, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Carpenter Insulation & Coatings Co. was a supplier of chemical roofing materials to Statewide Sheet Metal & Roofing, Inc. pursuant to a standing contract in which Statewide Roofing agreed to indemnify Carpenter for all claims and expenses "arising from" Statewide Roofing's acts or omissions in applying the materials. When both Statewide Roofing and Carpenter were sued in South Carolina state courts by ten individuals, who alleged injury resulting from the application of the roofing materials, Carpenter filed suit in the Eastern District of Virginia for a declaratory judgment that the indemnity clause required Statewide Roofing to indemnify Carpenter for any costs incurred as a result of the South Carolina litigation. The district court granted summary judgment in favor of Carpenter, and denied Statewide Roofing's subsequent motion for a new trial or to alter or amend the judgment.
 
 
 2
 On appeal, Statewide Roofing contends that the indemnity agreement violates public policy and is unenforceable to the extent that it calls for Carpenter to be indemnified against its own negligence. Because the indemnity provision does not violate Virginia law, which we apply in this diversity case, we affirm.
 
 
 3
 * Carpenter is a Virginia corporation which manufactures chemical roofing materials that are applied in three layers to form a urethane foam-based roofing system. Carpenter sells the materials to companies that install roofs; it does not itself apply the materials. The chemicals are containerized in liquid form prior to being sprayed on a roof, and they (and their fumes) can be hazardous in application, although the finished roofing system is harmless.
 
 
 4
 Statewide Roofing is a North Carolina corporation which is in the business of installing and repairing roofing systems. In July 1984, Statewide Roofing and Carpenter signed an "Applicator Contractor Agreement" under which Statewide Roofing agreed to use Carpenter's products in its operations, and in return, Carpenter agreed to provide informational literature, samples, and application training, as well as the chemicals. The agreement also contained an indemnity provision, which stated:
 
 
 5
 8. The Applicator Contractor [Statewide Roofing] shall be liable for the injury, disability, or death of workmen and other persons resulting from the Applicator Contractor's operations and the Applicator Contractor shall indemnify and hold the Company [Carpenter] harmless from any liability, loss, expense, claim, settlement or penalty arising from the Applicator Contractor's acts or omissions, including any legal expenses incurred by the Company with respect to such acts or omissions. In order to carry out the provisions of this paragraph, the Applicator Contractor shall purchase liability insurance covering the Applicator Contractor in a reasonable amount, but in no event shall such amount be less than $100,000.
 
 
 6
 In the fall of 1988, Statewide Roofing installed a roofing system on the Hampton County Law Enforcement Center in Hampton County, South Carolina, using the Carpenter-supplied materials. Alleging that they were injured by exposure to fumes from chemicals, ten individuals who were in the building during the application process sued Statewide Roofing and Carpenter in various South Carolina state court actions.
 
 
 7
 Carpenter subsequently filed a declaratory judgment action in federal district court in Virginia, contending that the indemnity provision in the Applicator Contractor Agreement required Statewide Roofing to indemnify Carpenter for any of its costs incurred as a result of the South Carolina litigation. On motions for summary judgment filed by both parties, the district court granted summary judgment in favor of Carpenter, holding that (1) Virginia law applies, (2) Virginia law does not disfavor indemnity agreements and does not subject them to stricter scrutiny than other types of contracts, and (3) the particular indemnity clause at issue here required Statewide Roofing to indemnify Carpenter for all losses and expenses which Carpenter might incur in defending the ten South Carolina tort cases. This appeal followed.
 
 II
 
 8
 Statewide Roofing contends that the indemnity clause should be interpreted under the law of South Carolina and that under South Carolina law, the indemnity provision is not enforceable to protect Carpenter from injuries caused solely by its own negligence. It argues that because ten individuals have filed suit in South Carolina for torts committed there, any indemnity provision invoked to protect against that liability should also be construed under South Carolina law.
 
 
 9
 We need not examine this argument because the Applicator Contractor Agreement expressly provides that Virginia law should be applied:
 
 
 10
 14. This Agreement shall be interpreted and construed pursuant to the laws of the Commonwealth of Virginia. Any provisions in conflict with the laws of the Commonwealth of Virginia shall be deemed void, and the parties shall be bound by the remaining provisions.
 
 
 11
 The parties' intention that the law of Virginia govern the interpretation and construction of the Agreement, which includes the indemnity provision, should be honored. See, e.g., Va.Code Ann. Sec. 8.1-105 (1965) (in a sales contract, the parties may choose the State whose law will govern their rights and duties, if there is a reasonable relation to the State). Accordingly, we will examine Statewide Roofing's claims under Virginia law.
 
 III
 
 12
 Statewide Roofing alternatively argues that the indemnity provision violates Va.Code Ann. Sec. 11-4.1 (Repl.Vol.1989), which renders particular indemnity provisions void as against public policy.* That statute provides in pertinent part:
 
 
 13
 Any provision contained in any contract relating to the construction, alteration, repair or maintenance of a building, ... or any provision contained in any contract relating to the construction of projects other than buildings by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury to persons ... suffered in the course of performance of the contract, caused by or resulting solely from the negligence of such other party or his agents or employees, is against public policy and is void and unenforceable.
 
 
 14
 By its terms, the statute applies to "any contract relating to the construction, alteration, repair or maintenance of a building." The Applicator Contractor Agreement, however, is a sales agreement for chemical roofing materials, not a construction contract. Moreover, the alleged injuries to the ten South Carolina plaintiffs were not "suffered in the course of performance" of the Applicator Contractor Agreement. Va.Code Ann. Sec. 11-4.1. Rather, their alleged injuries occurred during the performance of a contract between Statewide Roofing and Hampton County.
 
 
 15
 The district court correctly ruled that Va.Code Ann. Sec. 11-4.1 was inapplicable to the indemnity provision at issue here.
 
 IV
 
 16
 Statewide Roofing contends that Carpenter was solely negligent in preparing and shipping the chemicals and in failing to make adequate disclosure about their danger. It contends that this negligence was the sole cause of the injuries suffered by the Hampton County plaintiffs. It argues that an indemnity provision which is as broad as this one ought not to be construed, as a matter of public policy, to require Statewide Roofing to protect Carpenter against its own negligence. It urges that if the parties wished to accomplish that shift in liability, the indemnity provision should be more specific.
 
 
 17
 Under Virginia law, indemnity contracts are construed under the general rules that govern the interpretation of any other type of contract. Seaboard Air Line R.R. Co. v. Richmond-Petersburg Turnpike Authority, 202 Va. 1029, 121 S.E.2d 499, 503 (1961). These general rules call for a court "to construe the contract made between the parties, not to make a contract for them, and '[t]he polestar for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used.' " Id. (quoting Ames v. American Nat'l Bank, 163 Va. 1, 38, 176 S.E. 204, 216 (1934)); see also Daniel Constr. Co. v. Welch Contracting Corp., 335 F.Supp. 303, 305 (E.D.Va.1971) (contracts should be interpreted to give effect to parties' intentions, and parties are deemed to intend what the contract plainly declares).
 
 
 18
 The plain meaning of the indemnity provision leads to the interpretation that Statewide Roofing agreed to indemnify Carpenter for any losses resulting from the South Carolina litigation. The clause provides that Statewide Roofing shall be liable for injuries "resulting from [Statewide Roofing's] operations," and that Statewide Roofing will indemnify Carpenter for its losses "arising from [Statewide Roofing's] acts or omissions." It is undisputed that the injuries sustained by the plaintiffs in South Carolina are alleged to have resulted from the application process. Although Carpenter-manufactured chemicals were involved, it was Statewide Roofing who applied them to the roof of the Hampton County Law Enforcement Center. The alleged injuries thus arose from Statewide Roofing's acts.
 
 
 19
 We cannot agree with Statewide Roofing's characterizations of the state complaints that the claims of the Hampton County plaintiffs rest on allegations that Carpenter's negligence was the sole cause of their injuries. These state complaints charge both Carpenter and Statewide Roofing with negligence. In particular they allege that Statewide Roofing failed to warn and take other steps to prevent toxic fumes from entering the Hampton County Law Enforcement Center, and that the roofing chemicals were applied negligently. The record shows that Statewide Roofing had material data sheets describing the hazardous ingredients and instructions on precautions to be taken. It also shows that the containers of chemicals were labeled with warnings about inhalation of the chemicals and instructions to prevent injury.
 
 
 20
 Even if Carpenter was solely negligent in preparing or shipping the chemicals and that negligence proximately caused the alleged injuries suffered by the Hampton County plaintiffs, under the terms of the indemnity agreement, Statewide Roofing agreed to indemnify Carpenter. The terms of the indemnity provision are explicit: "[Statewide Roofing] shall indemnify and hold [Carpenter] harmless from any liability, loss, expense, claim, settlement or penalty arising from [Statewide Roofing's] acts or omissions." (Emphasis added.) The ordinary meaning of the word "any" is inclusive, and no exception is created for losses that may result solely or in part from Carpenter's negligence. When Statewide Roofing's acts are alleged to give rise to the cause of action against Carpenter, as is the case here, Statewide Roofing becomes obligated to indemnify Carpenter, regardless of any negligence on Carpenter's part.
 
 
 21
 The indemnity provision is admittedly broad and particularly favorable to Carpenter. But it is not against the public policy of Virginia for a party to contract against its own negligence. See Chesapeake & Potomac Tel. Co. of Va. v. Sisson & Ryan, Inc., 234 Va. 492, 362 S.E.2d 723, 729 (1987); Appalachian Power Co. v. Sanders, 232 Va. 189, 349 S.E.2d 101, 106 n. 3 (1986) (citing Cheasapeake & Ohio Ry. Co. v. Clifton Forge-Waynesboro Tel. Co., 216 Va. 858, 224 S.E.2d 317 (1976)).
 
 
 22
 Accordingly, the rulings of the district court in granting summary judgment and in denying the motion for a new trial or to alter or amend the judgment are
 
 
 23
 AFFIRMED.
 
 
 24
 ERVIN, Chief Judge, and JANE A. RESTANI, Judge, United States Court of International Trade, joined.
 
 
 
 *
 This argument was first presented when Statewide Roofing moved, pursuant to Fed.R.Civ.P. 59, for a new trial or to alter or amend the summary judgment. Curiously, this motion was filed after Statewide Roofing had already filed its notice of appeal from the grant of summary judgment. The timing of the Rule 59 motion prompted the district court to observe that it could not consider the statutory issue because the filing of the notice of appeal divested it of subject matter jurisdiction. The court then considered the issue, however, and as an additional ground for denying the motion, ruled that the statute did not apply to the Applicator Contractor Agreement between Statewide Roofing and Carpenter
 The district court properly considered the statutory issue because it did have subject matter jurisdiction over the Rule 59 motion, notwithstanding the fact that a notice of appeal had already been filed. Under Fed.R.App.P. 4(a)(4), "[a] notice of appeal filed before the disposition of [a Rule 59 motion] shall have no effect." This is true even if the notice of appeal is filed before a Rule 59 motion is filed (as distinct from "disposed of"), because once the motion is timely filed, "a previously filed notice of appeal ... 'supply self-destructs.' " Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61 (1982) (quoting 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice p 204.12, p. 4-65, n. 17 (1982)).