## CIRCUIT COURT OF FAIRFAX COUNTY

Meritor Savings, F.A.

v.

John V. Duke

June 15, 1993

Case No. (Law) 115299

By Judge Marcus D. Williams

This case was tried before the court on April 28, 1993, and is now before the court for decision. Based upon the evidence, the arguments of counsel, and the memoranda filed, the court makes the following findings.

### Facts

The facts are set out in the parties' briefs, memoranda, pleadings and by stipulation. Briefly stated, John V. Duke was a customer of Meritor Savings, F.A. On February 6, 1992, Duke appeared at Meritor and requested that the bank issue a teller's check[1] in the amount of $19,115.98 to PST, Ltd., drawn from funds in Duke's savings account. A check was then issued by Meritor, drawn on its account with the Federal Home Loan Bank of Atlanta (hereinafter "FHLB"). The check was delivered to the payee by Duke. On February 7, 1992, Duke re-appeared at Meritor and requested that the bank issue a stop payment order on the same check. In consideration for issuing the order, Meritor required Duke to execute an indemnity agreement dated February 7, 1992. Meritor issued the stop payment order to FHLB and recredited

---

[1] The check at issue in this case has been referred to as an "official," "bank," or "teller's" check. The court will use the term "teller's" check in this opinion.

Duke's account for the amount of the check. FHLB dishonored the check when presented by the payee. Sometime thereafter, an attorney notified Meritor and demanded that Meritor honor the dishonored check. On February 25, 1992, Meritor issued a replacement check drawn on its account with FHLB in the amount of $19,190.11, payable to PST, Ltd. On February 27, 1992, Meritor placed a hold on $10,859.38, which was the balance of Duke's funds in his account with Meritor, and made a written demand on Duke for the remainder of the loss. When Duke refused to pay Meritor, this lawsuit followed. Meritor argues that the check issued by it on behalf of Duke was analogous to a certified or cashier's check, and was not subject to countermand under the Virginia Uniform Commercial Code, Virginia Code §§ 8.1–101 *et seq.* (1950, as amended). According to Meritor, it agreed to issue a stop payment order as an accommodation to its customer, but, because the check is a cash equivalent, Meritor was "compelled" to honor the same when presented by the payee. Finally, Meritor asserts that the indemnity agreement releases it from all liability arising from the stop payment order and was intended to protect the bank from the very thing that occurred in this case.

In response, Duke argues that the check issued by Meritor was a teller's check, not a cashier's check. The distinction is significant in that the former is more like an ordinary check under the Code. Duke avers that like an ordinary check, a teller's check is subject to a stop payment order by the customer because it is not accepted upon issuance. Thus, Duke maintains that Meritor was not obligated or compelled to honor the check upon presentment by the payee because it had not yet been accepted or certified. With regard to the indemnity agreement, Duke contends that Meritor either breached the contract by failing to perform as promised or is not entitled to indemnification because Duke's performance was discharged by Meritor's failure to satisfy a condition precedent, that is stopping payment of the check.

### Conclusions of Law

I. *Whether the teller's check issued by Meritor at the request of Duke obligated Meritor to pay on the instrument over a subsequent stop payment order.*

In order to determine whether the teller's check issued by Meritor was an unconditional promise to pay by Meritor, it is necessary to determine the nature of the check involved in the present case. By

definition, a check drawn by a bank upon itself is a cashier's check. In effect, the bank is the drawer and the drawee. Commercially, a cashier's check, unlike an ordinary check, operates as an assignment of funds and is treated as a cash equivalent or substitute. *Swiss Credit Bank v. Virginia Nat'l Bank-Fairfax*, 538 F.2d 587 (4th Cir. 1976). The issuing bank is not free to refuse payment on such a check when it is presented for payment by the payee. *Id.* Further, under Va. Code § 8.4–403, a cashier's check is not subject to countermand because it is deemed "accepted" by the mere act of its issuance. "Acceptance" is the "*drawee's* signed engagement to honor the draft as presented." Va. Code § 8.3–410(1). In the case of a cashier's check, the *drawee* is the issuing bank and the drawer.

However, a teller's check is distinguishable from a cashier's check. It is a check drawn by a bank on its account in another bank. For purposes of the Virginia Uniform Commercial Code, a "bank carrying an account with another bank" is a "customer." Va. Code § 8.4–103(1)(e). The drawer bank as the customer may stop payment on its check prior to acceptance or certification. Va. Code § 8.4–403(1). As such, the drawer bank's liability is not governed by Va. Code § 8.3–411 in that it was not "accepted" upon issuance by the drawer/customer bank like a cashier' check.

In the present case, Duke purchased a teller's check from Meritor. Meritor issued a check drawn on its account with the Federal Home Loan Bank of Atlanta ("FHLB"). At the request of Duke, Meritor agreed to issue a stop payment order on the check as a customer with FHLB. In accordance with the stop payment order, FHLB dishonored the check when presented for payment by the payee. Despite Meritor's arguments to the contrary, the court concludes that the check issued by Meritor was a teller's check that was not accepted or certified upon issuance or by the drawee, and was subject to countermand.

In support of its position, Meritor relies primarily on *Guaranty Fed. Sav. & Loan v. Horseshoe Operating*, 748 S.W.2d 519 (Tex. App. Dallas 1988), *rev'd on other grounds*, 793 S.W.2d 652 (Tex. 1990),[2] in which the court applied the "cash equivalent" theory to teller's checks.

---

[2] It is interesting to note that on appeal, one of the issues presented to the Texas Supreme Court was whether a bank which issues a teller's check may assert defenses (including its customers' defenses) to payment. The court held that banks could assert their customers' defenses if the payees were holders and not holders in due

In that case, a payee sued the drawer bank that stopped payment on a teller's check at the request of its customer. The court held that the drawer of the teller's check had no right to stop payment because "business of this state is transacted with such checks with the expectation that they do represent cash." *Id.* at 525. The court looked to other jurisdictions, found two different approaches to the treatment of teller's checks, and concluded that because the evidence in that case indicated that Guaranty considered the teller's check to be the equivalent of cash, the teller's check was accepted for payment when issued and was not subject to countermand. But several jurisdictions have disagreed, finding a teller's check and a cashier's check to be two distinct negotiable instruments. *Lo Monaco v. Belfiore,* 175 A.D.2d 59, 572 N.Y.S.2d 315 (A.D. I Dept. 1991); *Fur Funtastic, Ltd. v. Kearns,* 104 Misc. 2d 1030, 430 N.Y.S.2d 27 (N.Y. City Civ. Ct. 1980); *Rubin v. Walt Whitman Fed. Sav. & Loan Assoc.,* 21 U.C.C. 610 (N.Y. Sup. App. T. 1977); *Bruno Collective Fed. Sav. & Loan Assoc.,* 147 N.J. Super. 115, 370 A.2d 874 (1977); *Fulton Nat. Bank v. Delco Corp.,* 128 Ga. App. 16, 195 S.E.2d 455 (1973).

Although there is no guiding precedent in Virginia on this issue, the court finds that the check issued by Meritor on its account with FHLB has the characteristics of an ordinary check, not a cashier's or certified check.

Upon dishonor, PST, Ltd., as a holder, may have a right of recourse against Meritor as the drawer of the teller's check. Va. Code § 8.3–507. However, a mere holder takes the instrument subject to any defenses that a party would have on a simple contract. Va. Code § 8.3–306. Assuming that Duke had a valid defense to PST's entitlement to payment, Meritor could have raised Duke's defense in an action on the instrument by PST, Ltd. *Fulton Nat. Bank v. Delco Corp.,* 128 Ga. App. 16, 195 S.E.2d 455 (1973). In addition, Meritor did not prove that the attorney who allegedly demanded payment was a holder in due course. Nor is there any evidence that PST, Ltd., enjoyed the status of a holder in due course.

Because the teller's check issued by Meritor at the request of Duke was not an unconditional promise to pay by Meritor under the Virginia

course. The court remanded the matter for the determination of the status of Horseshoe as a holder in due course.

Uniform Commercial Code, Meritor was not compelled to honor it upon presentment by the payee.

II. *Whether the indemnity agreement obligates Duke to indemnify Meritor for Meritor's payment of the teller's check upon demand.*

Inasmuch as Meritor was not under a legal obligation to pay the check when presented, it must be determined whether Meritor's payment of the teller's check is a loss entitled to indemnification under the parties' agreement.

The indemnity agreement between Meritor and Duke sets forth the obligations of the parties and effectively controls the resolution of this cause. Generally, an indemnity agreement is defined as a "bilateral agreement between an indemnitor and an indemnitee in which the indemnitor promises to reimburse his indemnitee for loss suffered or to save harmless from liability." *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983). Principles of contract law govern the construction of indemnity agreements and in determining the parties' rights and liabilities under such agreements. *Seaboard Air Line RR. Co. v. Richmond-Petersburg Turnpike Authority*, 202 Va. 1029, 121 S.E.2d 499 (1961). When interpreting an indemnity agreement, "[t]he polestar for the construction is the intention of the contracting parties as expressed by them in the words they have used." *Id.* at 1033, *citing Ames v. American Nat'l Bank*, 163 Va. 1, 38, 176 S.E. 204, 216 (1934). If the terms in a contract are clear and unambiguous, the court will read it according to its plain meaning. *Paramount Termite Control Co. v. Rector*, 238 Va. 171, 380 S.E.2d 922 (1989). Moreover, the language must clearly and definitely show an intention to indemnify against *a certain loss or liability. Moore v. Chesapeake & O. Ry.*, 493 F. Supp. 1252 (S.D. W. Va. 1980), *aff'd*, 649 F.2d 1004 (4th Cir. 1981) (emphasis added). Upon its review, the court may consider the facts and circumstances involved at the time of entering into the agreement, as well as "the purposes for which it is made as an aid to the interpretation of the words used." *Seaboard*, 202 Va. at 1033.

Duke would not be liable to indemnify a purely voluntary payment made by Meritor. Assuming that Meritor was under no legal obligation to unconditionally honor the check when presented for payment, then an indemnity agreement does not protect the indemnitee against losses for which the indemnitee is not actually legally liable to pay or which the indemnitor improperly pays another, without the knowledge or

approval of the indemnitor. 41 Am. Jur. 2d, *Indemnity*, § 33, p. 723; *see also Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (Tex. Civ. App. 1978). Only where the "liability is clear and a defense to the suit would be unavailing" should "the indemnitee discharge a claim or demand against him and bring his suit for indemnity without waiting . . . but the amount so paid is not conclusive on the indemnitor, and the indemnitee takes the risk in an action against the indemnitor of establishing the facts on which the indemnitor's liability depends." 42 C.J.S., *Indemnity*, § 23, pp. 112–13, *citing Glens Falls Indemnity Co. of Glens Falls v. Carobine*, 36 N.Y.S.2d 253 (N.Y. Civ. Ct. 1942); *Minton v. American Surety Co. of New York*, 184 Okla. 602, 88 P.2d 883 (1939); *Walton v. Cherokee Colliery Co.*, 70 W. Va. 48, 73 S.E. 63 (1911). However, a voluntary payment does not necessarily bar the right to indemnification if the indemnitee is "confronted with an obligation that he cannot legally resist." 41 Am. Jur. 2d, *Indemnity*, § 33, p. 723. In that instance, the indemnitee must be able to prove that he is under an actual legal obligation to pay, not merely under a potential obligation. *Id.*

This principle was followed in *Valloric v. Dravo Corp.*, 178 W. Va. 14, 357 S.E.2d 207 (1987). In that case, a contractor on a project agreed to indemnify and hold harmless the owner, engineer and general contractor against any and all claims for loss, liability, or damage, etc. arising out of the contractor's work at the construction job site. An electrician was injured on the job and sued the general contractor and owner for their alleged negligence who, in turn, filed a third party complaint against the contractor under the indemnity agreement. Prior to the trial of the case, the general contractor and owner settled with the injured party after first inviting the contractor to participate in negotiations.

The trial court held that the indemnitees settled the claim with a good faith belief that they may be found liable to the injured party. The trial court concluded that this was sufficient to sustain their indemnity claim against the indemnitor.

The issue on appeal was whether the indemnitees had to prove that they were *actually* liable to the plaintiff or whether it was sufficient to show that at the time of settlement, they had a good faith belief of *potential* liability. *Id.* at 211 (emphasis added). The West Virginia Supreme Court of Appeals found that the prerequisites for application of the potential liability standard were that the indemnitor had (1) actual

notice of the claim; (2) an opportunity to defend it; and (3) the right to participate in any settlement negotiations. The court reasoned that a majority of the cases applying the actual liability standard involve situations where the indemnitor has not been notified or given an opportunity to defend. *Id.* at 212, *citing Jennings v. United States*, 374 F.2d 983, 986 (4th Cir. 1967) (where the Fourth Circuit held that "the indemnitee's unilateral act, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and opportunity to defend are indispensable due process satisfying elements"). The court in *Valloric* held that because the indemnitor had been notified of and given opportunity to participate in the settlement, the indemnitees were reasonable in settling the claim before trial and were entitled to indemnity from the indemnitor. *Id.*

In the case at bar, the court has already determined that Meritor was not under a legal obligation to unconditionally honor the teller's check when presented for payment. Instead, Meritor made a voluntary payment not contemplated by the indemnity agreement. Meritor may have had a good faith belief in a potential liability on the check as the drawer. But because Meritor failed to notify Duke of the payee's demand and to give Duke an opportunity to defend the claim on his or Meritor's behalf, Meritor is not entitled to indemnity from Duke for the payment of the teller's check.

For the foregoing reasons, the court renders judgment in favor of the defendant.