**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-2404**

_____

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

              Plaintiff - Appellee,

       v.

ANTONELLI, TERRY, STOUT & KRAUS, LLP; DONALD E. STOUT, Esq.,

              Defendants - Appellants,

       and

ADRIENNE ANDROS FERGUSON, individually and on behalf of THE
ESTATE OF ANDREW A. ANDROS; EMILY J. ANDROS, individually
and on behalf of THE ESTATE OF ANDREW A. ANDROS; JULIA LYNN
ANDROS, individually and on behalf of THE ESTATE OF ANDREW
A. ANDROS; PENELOPE J. ANDROS, individually and on behalf of
THE ESTATE OF ANDREW A. ANDROS; JOHN S. RICHARDS; ABBAS
YOUSEF; MIRSUL INVESTMENTS S.A.; IMPORTECHNO INTERNATIONAL
INCORPORATED,

              Defendants.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Liam O'Grady, District
Judge.  (1:08-cv-01020-LO-TCB)

_____

Argued:  December 6, 2011          Decided:  March 29, 2012

_____

Before MOTZ, GREGORY, and KEENAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Lon Arthur Berk, HUNTON & WILLIAMS, LLP, McLean, Virginia, for Appellants. Danny Mark Howell, SANDS ANDERSON, PC, McLean, Virginia, for Appellee. **ON BRIEF:** Brian J. Gerling, HUNTON & WILLIAMS, LLP, McLean, Virginia, for Appellants. Mikhael D. Charnoff, SANDS ANDERSON, PC, McLean, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Antonelli, Terry, Stout & Kraus, LLP ("the Antonelli Firm") and Donald E. Stout, Esq. ("Stout") (collectively "Appellants") seek a declaratory judgment that their insurer, Minnesota Lawyers Mutual Insurance Co. ("MLM"), has a duty to defend them in a pending Florida state court action ("the Ferguson action"). The district court, applying Virginia law, determined that MLM does not have a duty to defend Appellants because the Ferguson complaint falls within the insurance policy's Business Enterprise Exclusion. We affirm.

I.

This case returns to us after we previously reversed and remanded the district court's dismissal of the action. Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x 698 (4th Cir. 2009). We instructed the district court on remand to "decide[ ] whether the allegations in the [Ferguson] complaint were within the scope of the insurance policy." Id. at 702. To do so, the district court compared the Ferguson complaint and the insurance policy. The district court thoroughly described both documents, so we need only briefly recount the most salient points.

A.

According to the Ferguson complaint, in 1986, inventor and entrepreneur Andrew Andros formed Telefind Corp. in order to develop and market wireless email technology ("WET"). Telefind retained Appellants to perform patent prosecutions on its behalf. Over time, Appellants' role evolved: from pure attorneys to equity investors to increasingly immersing themselves in counseling and managing Telefind's strategy and operations.

Telefind received substantial financial backing from a group of outside investors ("the Richards Investors"). The Richards Investors lent Telefind $6 million via a loan convertible to equity through a Panamanian corporation, Flatt Morris, S.A. The loan agreement specified that Stout would serve as trustee for Flatt Morris and would "hold all of Telefind's intellectual property [both current and prospective] in trust for the benefit of Flatt Morris . . . in the event that Telefind defaulted." Over time, Appellants acquired a majority equity share of Flatt Morris, including its Telefind assets.

In 1989, Telefind signed a leasing agreement with Computer Leasco, Inc. ("Leasco") whereby Leasco provided Telefind with computers in exchange for a monthly fee and a security interest in Telefind's intellectual property. When Telefind fell behind on its payments, Leasco sued. Around the same time, Telefind

4

began negotiating with AT&T and France Telecom regarding the potential sale of its WET. Concerned that Leasco might interrupt these negotiations with a judgment against Telefind, Stout negotiated a "standstill agreement" with Leasco pending the outcome of the AT&T and Telecom negotiations.

As the negotiations faltered and Leasco became impatient, "Stout devised a legal strategy that he told [the] Richards Investors and Andy Andros would legally protect . . . Telefind['s] . . . interest in the [WET]." In order to avoid Telefind's creditors, Stout recommended placing the WET patents in a separate legal entity. Stout stressed that the Ferguson plaintiffs would "lose their entire interest in the [WET] if they did not follow his advice."

To implement Stout's strategy, three ESA Telecommunications ("ESA") employees -- a company that Telefind worked with previously -- filed the WET patents "in their own names as inventors." Stout emphasized that Andros and the Richards Investors could "not have any documented direct ownership interest in the [WET]," but he assured them that "they would continue to participate in any benefits associated with the [WET]." Pursuant to this understanding, the Ferguson plaintiff's disavowed their legal interest in the patents. The ESA employees then assigned the patents to Stout. Finally, in

5

June 1992, Stout created a shell corporation, NTP, Inc., to hold the WET patents.

The strategy succeeded. Though Leasco eventually obtained a judgment against Telefind, NTP prevented Leasco from obtaining any share of the WET patents. NTP's success was based, in part, on representations from Andros stating that he had no interest in the WET. Andros allegedly made these representations based on Appellants' assurances that he would continue to retain a share of any future profits.

In late 2001, ten months after Andros died, NTP filed a patent infringement action against Research In Motion ("RIM"), alleging that RIM's Blackberry system infringed on the WET patents. In March 2006, RIM settled the suit for $612.5 million and received a perpetual license. Stout, his partners at the Antonelli firm, and others apportioned the settlement.

When Andros's surviving family and the Richards Investors contacted Stout regarding their share of the RIM settlement, Stout denied the existence of any such arrangement and refused to share the settlement. The Ferguson action ensued, asserting, on the bases of the above facts, claims of breach of fiduciary duty, breach of contract, unjust enrichment, and promissory estoppel. In the complaint, the Ferguson plaintiffs do not challenge NTP's ownership of the WET patents. They argue only

6

that their implicit understanding with Appellants was that they would receive a share of any WET profits.

B.

During the relevant period, the Antonelli Firm had a Professional Liability Insurance Policy ("the Policy") with MLM that covered

> all sums . . . which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:
> (1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
> (2) resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law . . . .

Applying this language, the district court determined that some of the "damages alleged in the Ferguson complaint resulted from [covered] legal services rendered by [Appellants]." It thus held that, "barring any applicable exclusions, MLM has a duty to defend [Appellants] in the underlying action." MLM does not challenge this conclusion on appeal.

The district court next considered MLM's argument that the allegations in the Ferguson complaint triggered the Policy's Business Enterprise Exclusion ("BEE").[*] The BEE excludes

---

[*] Before the district court, MLM also argued that it had no duty to defend because (1) the Ferguson allegations fell within the Specific Entity Exclusion and (2) Stout failed to provide adequate notice. The district court did not reach these claims, however, and MLM does not reassert them on appeal.

7

> any CLAIM arising out of PROFESSIONAL SERVICES
> rendered by any INSURED in connection with any
> business enterprise:
> (a) owned in whole or part;
> (b) controlled directly or indirectly; or
> (c) managed,
> by any INSURED, and where the claimed DAMAGES resulted
> from conflicts of interest with the interest of any
> client or former client or with the interest of any
> person claiming an interest in the same or related
> business enterprise.

The district court found that the BEE applied because

> [Appellants] rendered [professional] services in
> connection with the Telefind, Flatt Morris, and NTP
> enterprises. Flatt Morris and NTP were both owned,
> controlled, or managed by [Appellants]. The damages
> alleged in the complaint resulted from a conflict of
> interest between [Appellants] and the Ferguson
> Plaintiffs, who claimed an interest in NTP, Telefind,
> and Flatt Morris.

Appellants challenge this determination.


II.

Appellants first argue that a number of terms within the

BEE are ambiguous, and therefore should be construed in their

favor. Applying such a favorable construction, they contend,

would demonstrate that the Ferguson complaint does not fall

within the BEE. We must reject this argument.

Under Virginia law, insurance policies and their exclusions

are construed according to contract principles. Seabulk

Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 419 (4th

Cir. 2004). Insurers bear the burden of establishing that the

alleged conduct unambiguously falls within the exclusionary

8

language. Fuisz v. Selective Ins. Co., 61 F.3d 238, 242 (4th Cir. 1995). If a contract contains ambiguities it must be construed against the insurer, "[b]ut this does not authorize the court to make a new contract for the parties, nor to adopt a construction not justified by the language or intent of the parties." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636-37 (4th Cir. 2005) (quoting Ocean Accident & Guar. Corp. v. Wash. Brick & Terra Cotta Co., 139 S.E. 513, 517 (1927)). Thus we must determine whether the BEE unambiguously applies to the Ferguson complaint pursuant to a reading of the exclusion that is "reasonable" and avoids "absurd results." Transit Cas. Co. v. Hartman's Inc., 239 S.E.2d 894, 896 (Va. 1978).

Under the terms of the Policy, the BEE excludes coverage for claims (1) "arising out of professional services" (2) rendered "in connection with any business enterprise" (3) owned, controlled, or managed, by any insured, and (4) resulting "from conflicts of interest with the interest of any client or former client."

There is no dispute that this case "aris[es] out of professional services" that Appellants provided to the Ferguson plaintiffs, thereby satisfying the first requirement of the BEE. Appellants counseled Andros and others to renounce their interest in the WET patents in order to avoid their creditors.

9

This strategy prevented Leasco from reaching the WET assets, but also created the circumstances whereby plaintiffs were frozen out of future profits.

Further, and just as clearly, these "professional services" were rendered "in connection with [a] business enterprise," meeting the second requirement of the exclusion. The phrase "in connection with" is a common insurance phrase that is given particularly broad scope. See, e.g., Goldman Paper Stock Co. v. Richmond, F. & P.R., 212 Va. 293, 296 (Va. 1971) ("in connection with" broader than "arising out of"); see also Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (explaining "in connection with" encompasses more than causal connection); Metro. Prop. & Cas. Ins. v. Fitchburg Mut. Ins., 793 N.E.2d 1252, 1255 (Mass. App. 2003) ("In connection with" should "not be construed narrowly but [is] read expansively in insurance contracts.") (collecting cases). Moreover, although the phrase "business enterprise" is not defined by the policy, there can be little dispute that it encompasses the various corporations involved here -- Telefind, Flatt Morris, and NTP.

The Ferguson complaint also clearly meets the third requirement of the exclusion since it alleges that Appellants owned, controlled, or managed at least Flatt Morris and NTP. Stout served as a trustee for Flatt Morris, and Appellants eventually acquired a majority equity interest. Similarly,

10

Stout helped incorporate NTP. NTP had no employees and Stout, other attorneys at the Antonelli Firm, and their families were among NTP's few shareholders.

Finally, the asserted damages surely resulted "from conflicts of interests." The defendant attorneys in this case allegedly obtained complete ownership and control of their clients' assets and exploited those assets for personal benefit. This conduct violates any number of Virginia professional ethics rules. See, e.g., Va. R. Prof'l Conduct 1.8(a) ("A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client . . . ."); id. at 1.8(b) ("A lawyer shall not use information relating to representation of a client for the advantage of the lawyer or of a third person or to the disadvantage of the client . . . ."); id. at 1.8(j) ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . . .").

In sum, we find the allegations of the Ferguson complaint unambiguously fall within the BEE.

III.

Perhaps recognizing the weakness of their contention that the BEE does not apply, Appellants offer one other argument.

11

They assert that even if this exclusion applies to the _Ferguson_ complaint on the whole, because the _Ferguson_ plaintiffs "might prove only the allegations falling within coverage without proving the allegations within the exclusion, the district court should have found a duty to defend."  Appellants correctly point out that insurers are required to defend insureds "if any allegations may potentially be covered by the policy."  CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009).  Under this "potentiality rule," an insurer owes a duty to defend if a complaint "alleges facts and circumstances, some of which would, if proven fall within the risk covered by the policy."  Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 475 S.E.2d 264, 265 (Va. 1996).

Appellants hypothesize that the _Ferguson_ plaintiffs may prove allegations that trigger coverage, but not the BEE.  For example, the _Ferguson_ plaintiffs may prove that Appellants provided professional services by advising their clients how to avoid their creditors, but may fail to show that these services were rendered "in connection with any business enterprise" or resulted "from conflicts of interest."  In essence, Appellants argue that the _Ferguson_ action may amount to merely a claim for legal malpractice.  We reject this hypothesis.

Virginia's potentiality rule requires us to examine the complaint and determine whether any potential judgment under that complaint would fall within the Policy.  See CACI Int'l, 566 F.3d at 155.  This process does not disregard the actual allegations that are made.  See, e.g., Nationwide Mut. Ins. Co. v. Overlook, LLC, 785 F. Supp. 2d 502, 533 (E.D. Va. 2011) (refusing insured's attempt to pick out certain allegations because "every claim in the underlying . . . complaint implicates the defective drywall as the basis for the claim, or the cause of the resulting damages.  Thus every claim implicates the Pollution Exclusion.").

In the Ferguson complaint, each cause of action is premised on an agreement between plaintiffs and Appellants that they would share any WET proceeds.  As both parties acknowledged at oral argument, because the plaintiffs consented to every initial step of Appellants' strategy, if Appellants had shared the WET proceeds with the Ferguson plaintiffs, there would be no loss for the Ferguson plaintiffs to recover.  Without any potential loss, there can be no duty to defend.  See Va. Elec. & Power, 475 S.E.2d at 265-66 (explaining insurer has no duty to defend where there is no possibility that insurer will be required to indemnify insured).  Thus because the breach of the agreement is central to any potential recovery, Appellants cannot obtain a defense by having a court assume plaintiffs will fail to prove

the heart of their allegations. Rather, we must evaluate the Ferguson complaint presuming that plaintiffs will prevail. In doing so, we conclude that MLM has no duty to defend because the BEE applies. See Part II, supra; see also AES Corp. v. Steadfast Ins. Co., 715 S.E.2d 28, 33 (Va. 2011) ("The gravamen of [the] nuisance claim is that the damages sustained were the natural and probable consequences of AES's intentional emissions."); Fuisz, 61 F.3d at 243 ("[I]f the Terex complaint only permits Terex to recover upon proof that Fuisz specifically intended to cause the company injury, then Selective has no duty to defend Fuisz.").

Appellants' heavy reliance on Parker v. Hartford Fire Ins. Co., 278 S.E.2d 803 (Va. 1981), is misplaced. The policy at issue in Parker specifically excluded intentional torts, and the underlying complaint alleged a "willful" trespass. The Supreme Court of Virginia determined that the action was nonetheless covered by the policy because the pleadings could also support a claim of "unintentional" trespass. Id. at 804 (citing Chesapeake & O. R. Co. v. Greaver, 66 S.E. 59, 60 (Va. 1909)). Appellants seek to stretch Parker too far. Parker is premised on a unique feature of Virginia trespass law -- when a landowner alleges intentional trespass but "fails to sustain this allegation, the owner is still entitled to recover actual damages on proof of the unintentional trespass." Id. at 804.

14

<u>Parker</u> thus stands for the principle that alternative causes of action that give rise to a duty to defend include both those <u>explicitly alleged</u> and those <u>implied by law</u>. In this case, however, Appellants have cited no authority, and we have found none, demonstrating that any of the <u>Ferguson</u> causes of action implicitly create a claim for legal malpractice that might fall within the Policy.

Appellants' reliance on authority finding a duty to defend where some <u>alternative</u> allegations fall within the policy is also unavailing. Cases considering alternatively worded complaints do not look to <u>any conceivable</u> cause of action. They require that the complaint <u>actually</u> asserts the claim. <u>See, e.g.</u>, <u>Fuisz</u>, 61 F.3d at 245 (avoiding intentional act exclusion because "each of the four causes of action" alleged "<u>reckless disregard</u>" in addition to "actual malice"). Given that the <u>Ferguson</u> complaint does not assert legal malpractice as an alternative theory, we will not infer such potential liability.

IV.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

15