APPALACHIAN POWER COMPANY

V.

EARLINE VIRGINIA SANDERS

Record No. 830435

PATRICK COUNTY-STUART CHAMBER OF COMMERCE, INC.

V.

EARLINE VIRGINIA SANDERS, ET AL.

Record No. 830436

October 10, 1986

Present: All the Justices

*Richard C. Rakes (Gentry, Locke, Rakes & Moore*, on briefs), for appellant (Record No. 830435).

*John W. Carter (Lawrence G. Wilson, Jr.; Robert H. Whitt, Jr.*, on brief), for appellee (Record No. 830435).

*James L. Hutton (Gilmer, Sadler, Ingram, Sutherland & Hutton*, on briefs), for appellant (Record No. 830436).

*Richard C. Rakes; John W. Carter (Lawrence G. Wilson, Jr.; Robert H. Whitt, Jr.; Gentry, Locke, Rakes & Moore*, on briefs), for appellees (Record No. 830436).

POFF, J., delivered the opinion of the court.

These appeals, consolidated for review, arise from a judgment confirming the verdict of a jury which awarded a plaintiff damages against a lessor and its lessee for injuries sustained in a fall on the leased premises. Neither appellant raises a question concerning the quantum of damages or contributory negligence. The lessor challenges an instruction defining the standard of care a lessor owes to a lessee's invitee, and both defendants question the sufficiency of the evidence of primary negligence. In a cross-appeal, the lessee also assigns error to the trial court's ruling in favor of the lessor on an indemnity clause in the lease.

In a lease agreement executed by the parties on October 4, 1978, Appalachian Power Company (Apco) leased two lots on the north side of Blue Ridge Street in the Town of Stuart to Patrick County-Stuart Chamber of Commerce, Inc. (the Chamber), for the conduct of the 1978 Patrick County Harvest Festival. The consideration was one dollar, and the term extended from October 5 to October 8, 1978, both inclusive. In paragraph three, the Chamber agreed to indemnify Apco against claims arising out of the use of the premises.

The two vacant lots were the sites of former residences, and the remains of an old sidewalk ran along the street. One lot was covered in grass; the other was overgrown with kudzu.[1] The festival opened October 7. Most of the exhibits of arts and crafts were stationed on the grass-covered lot, but the Chamber permitted some exhibitors to use the other lot. Earline V. Sanders and her husband attended the festival on the afternoon of October 8. As they were leaving an exhibit located at the rear of the kudzu-covered lot, Mrs. Sanders fell in a hole and broke her right ankle.

Claiming damages for permanent injuries, Mrs. Sanders filed a motion for judgment against Apco and the Chamber. The defendants filed grounds of defense, and Apco filed a cross-claim invoking the indemnity clause against the Chamber.

Witnesses for the plaintiff described the hole, which was located near the old sidewalk, as an uncapped water meter hole 12 to 18 inches wide and two to three feet deep. The kudzu had been "bushhogged and left" unraked, and the hole was concealed by the vine and the clippings. Mrs. Sanders testified that she was walking carefully and watching where she placed each step, that she did not see the hole, and that the hole was not "visible to ordinary inspection".

The trial court overruled the defendants' motions to strike the plaintiff's evidence. Apco introduced the lease agreement as an exhibit, and both defendants rested without offering any further evidence. The jury returned a verdict awarding the plaintiff $125,000 in damages against the defendants, jointly and severally. The trial court overruled the defendants' motions to set the verdict aside, ordered that Apco "recover of [the Chamber] all sums [Apco] pays on the judgment . . . plus attorney's fees and other costs in-

---

[1] Kudzu (*pueraria thunbergiana*) is generally defined as a rapid-growing vine, native to Southeast Asia, with dense foliage consisting of woody, hairy stems and large, compound leaves. N. Taylor, *Taylor's Encyclopedia of Gardening* 992 (4th ed. 1961).

curred in the defense of this action", and suspended execution of the judgment pending appeal.

Apco assigns error to Instruction # 6. That instruction told the jury to find for the plaintiff against the lessor if it believed that Apco

> leased the land for the festival . . . when [Apco] knew, or by the exercise of reasonable care should have known: 1) that the condition of the land involved an unreasonable risk of harm to persons attending the festival, and 2) that the Chamber would admit persons to the festival before putting the land in safe condition . . . [and that Apco] failed to use reasonable care to discover or to remedy . . . any hazardous condition.

As the trial court observed, this instruction was based upon *Restatement (Second) of Torts* § 359 (1965) which reads as follows:

> A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor
>
> (a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and
>
> (b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and
>
> (c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.

This section defines one of the exceptions referenced in § 356 which provides, as the general rule, that "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." Under § 359, if a lessor knows that the lessee intends to admit the public to the leased premises, the lessor owes the lessee's invitees the duty to inspect the premises before possession is transferred and to remedy any unreasonably hazardous condition which was or should

have been discovered, or to take such other measures as required to protect the lessee's invitees from harm.

■ We are aware that some courts have applied this "public use" exception to the general rule. *See generally*, Annot., 17 A.L.R.3d 422, § 3 (1968). That exception is based upon the thesis that the owner of the fee is more knowledgeable than a lease-holder about the condition of the land and, therefore, that his duty to protect the public is greater. Yet, but for the lessee's invitation, those who enter upon the owner's land (unless licensed by the owner) do so as trespassers. Absent the owner's knowledge of a dangerous condition, we believe the superior duty to protect the public rests upon the lessee to make a reasonable inspection of the premises before he issues the invitation.

While we have recognized certain qualifications to the general rule, we have never adopted the exception defined in § 359. The following rule and its stated qualifications have been consistently applied in this Commonwealth:

> On the owner's surrender of control of the premises to his lessee, in the absence of any warranty of their condition or fraudulent concealment of *known* defects, or agreement to repair, he is not liable to the lessee or to his invitees for defects known to the lessee, or which he could have discovered by reasonable inspection, and the invitee stands in the shoes of the lessee with respect to his right to recover from the lessor.

*Oliver* v. *Cashin*, 192 Va. 540, 543, 65 S.E.2d 571, 572-73 (1951) (citations omitted) (emphasis added).[2]

Defending her judgment against Apco, Sanders argues that certain comments made by Apco's counsel in his opening statement to the jury were sufficient to show that Apco should have discovered the meter hole before it surrendered control of the premises

---

[2] Relying upon our opinion in *Atlantic Rural Exp., Inc.* v. *Fagan*, 195 Va. 13, 77 S.E.2d 368 (1953), Sanders argues that, because we mentioned a Connecticut decision which cited a law review article commenting upon cases in which the public use exception was applied, *id.* at 23, 77 S.E.2d at 373, we have "already recognize[d] the exception enunciated in § 359". We reject Sander's interpretation of our opinion. We upheld the verdict for the plaintiff in *Atlantic* because he was the lessor's invitee and the lessor violated the duty it owed him. The rule in *Oliver* was factually inapplicable to the *ratio decidendi*, and our reference to the Connecticut decision was merely a recognition that other courts would apply a different or additional rationale.

to the Chamber. Hence, Sanders reasons, the jury was entitled to find that Apco breached the duty imposed upon it by Instruction # 6 and *Restatement* § 359.

But, under the *Oliver* explication of a lessor's duty to its lessee and the lessee's invitees, the lessor is not chargeable with constructive knowledge of a latent defect. Indeed, even when the lessor has actual knowledge, if the defect is one the lessee could discover by reasonable inspection and the lessor has made no covenants of warranty or repair, the lessor is liable only when he is guilty of fraudulent concealment.

As Sanders concedes, there was no evidence that Apco had actual knowledge of the hazardous condition of its premises, and the lease contained no warranty or promise to repair. It is clear, therefore, that the jury's verdict against Apco was based upon a finding of constructive knowledge in accordance with Instruction # 6. We hold that the instruction misstated the law in Virginia, and we will reverse the judgment insofar as it awards the plaintiff damages against Apco.

We turn next to the Chamber's appeal from the plaintiff's judgment. A lessee, as possessor and occupant of the leased premises, owes the same duty to its invitees as an owner owes to its own invitees. Each is chargeable with constructive as well as actual knowledge of the condition of the property. Each is subject to liability to its invitee injured as the result of an unsafe condition (one which was not open and obvious to the invitee) if the invitor knew it existed, or by the exercise of reasonable care should have discovered its existence, and failed to remedy the condition or otherwise to protect the invitee against the danger. *Atlantic Rural Exp., Inc.* v. *Fagan*, 195 Va. 13, 77 S.E.2d 368 (1953) (owner and an occupant, each an invitor, both with constructive knowledge, both liable to invitee). *See also Miracle Mart* v. *Webb*, 205 Va. 449, 137 S.E.2d 887 (1964) (constructive knowledge of owner-operator). *Cf. Restatement (Second) of Torts* § 343 (1965).

There was no evidence to show that the Chamber had actual knowledge of the meter hole. The trial court instructed the jury to find for the plaintiff if it found that the Chamber should have discovered the hazardous condition of the premises, and the Chamber assigns no error to that instruction. Instead, the Chamber argues that the evidence was insufficient to support a finding of constructive knowledge.

■ Necessarily, constructive knowledge must be shown by circumstantial evidence. The festival did not commence until the third day of the leasehold, the accident did not occur until the afternoon of the fourth day, and the Chamber cannot complain that it did not have sufficient opportunity to discover a dangerous condition which a reasonable inspection could have disclosed. The two lots it leased were separated from the street by the remains of an old sidewalk. Each had been the site of a former residence. Customarily, residences situated in towns are served by municipal water systems which utilize meters installed in holes in the ground, and one of the plaintiff's witnesses testified that other lots fronting on Blue Ridge Street near the site of the festival have water meters similar to the one on Apco's lots. A covenant in a lease requiring the lessee to indemnify the lessor against claims filed by those who use the property is tantamount to a lessor's disclaimer of warranty, and considerations of self-interest ordinarily prompt such a lessee to make a careful inspection of the condition of the premises.

■ Here, one of the lots which the Chamber authorized exhibitors to use for the benefit of the Chamber's invitees was overgrown with kudzu. Although the kudzu had been mowed (when and by whom the evidence does not disclose), the surface of the land was concealed by the plant and its clippings. A jury could reasonably believe that the Chamber's duty to exercise ordinary care to have the premises in a condition reasonably safe for its invitees required it to rake and remove the clippings and conduct an inspection of the land more thorough than one expected of a casual visitor, and that, had it done so, it should have discovered a hole measuring up to 18 inches wide and up to three feet deep.

The plaintiff's evidence and the inferences reasonably derived from that evidence raised a jury question whether the Chamber had constructive knowledge of the dangerous condition of the land. We will not substitute our opinion for that of the jury, and we will affirm the judgment insofar as it awards the plaintiff damages against the Chamber.

Finally, we consider the indemnification issue raised by the Chamber in its cross-appeal against Apco. The indemnity clause provides:

As part of the consideration aforesaid, Tenant agrees to save harmless the Landlord from any and all claims of

whatever nature arising out of the use of said parcel for the purposes aforesaid, and will indemnify the Landlord from any loss, of whatever nature, that may occur through said use by the Tenant.

The Chamber says that any negligence the plaintiff may have proved "lies solely in Apco's failure to discover and warn plaintiff of the defect", and its only argument on brief is that the language of the indemnity clause was not sufficiently explicit to indemnify Apco against damages resulting from its own negligence.[3]

Because we have held that Apco was not guilty of actionable negligence, the Chamber's argument fails for want of its premise. The indemnity covenant was a crucial part of the consideration for the lease, one mutually executed as an arms-length contract by parties standing upon an equal footing. The only question remaining is whether, as the trial court ruled, the Chamber is indebted to Apco for "attorney's fees and other costs incurred in the defense of this action".

■ Applying recent precedent, we resolve that question in favor of Apco. "[W]here, as here, the right of the indemnitee is based upon an express contract, and no provision of the contract provides otherwise, . . . the indemnitee may recover reasonable attorney's fees and expenses of litigation spent in defense of the claim indemnified against." *Southern Railway Co. v. Arlen Realty*, 220 Va. 291, 296-97, 257 S.E.2d 841, 844 (1979) (rule adopted and applied even though indemnitee had not notified indemnitor of suit).

We will reverse the plaintiff's judgment against Apco, affirm the plaintiff's judgment against the Chamber, affirm that portion of Apco's judgment against the Chamber which awarded Apco reasonable attorney's fees and other costs incurred in the trial court, and enter final judgment here in accordance with our holdings.

*Reversed in part,*
*affirmed in part,*
*and final judgment.*

[3] A private property owner, including a common carrier while acting as such, may lawfully contract to indemnify itself against its own negligence without offending public policy, *C. and O. Ry. Co. v. Telephone Co.*, 216 Va. 858, 224 S.E.2d 317 (1976), and the Chamber does not challenge the indemnity contract on public-policy grounds.