**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STANLEY M. BELL, SR.,
Plaintiff-Appellant,

v.                                                              No. 97-2191

NASH-FINCH COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Glen M. Williams, Senior District Judge.
(CA-96-101-A)

Argued: January 28, 1999

Decided: April 2, 1999

Before WIDENER, MURNAGHAN, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Karel Brown Ryan, RYAN LAW FIRM, P.C., Tazewell,
Virginia, for Appellant. Paul Arthur Billups, MUNDY & ADKINS,
Huntington, West Virginia, for Appellee. **ON BRIEF:** Gerald L.
Gray, GERALD GRAY LAW FIRM, Clintwood, Virginia, for Appel-
lant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The case at bar is a diversity matter in which a truck driver (Stanley M. Bell) appeals from the district court's grant of judgment as a matter of law to Nash-Finch at the close of all of the evidence. The district court concluded that Bell failed to establish a prima facie case of negligence because he could not establish that Nash-Finch had sufficient notice of the defective condition. Moreover, the district court concluded that Bell's failure to use the jack correctly also contributed to his injury. Bell claims that the court erred in failing to find that the prior repairs made to the pallet jack he was using when he was injured established sufficient notice to Nash-Finch that they could be held liable in negligence. Moreover, he claims, the court's failure to admit evidence of subsequent repairs made to the same pallet jack was also error. Having reviewed Bell's claims, we find no error and affirm.

I.

Bell is a commercial truck driver who hauls products in interstate commerce. Nash-Finch is a grocery distributor. On the assignment during which he was injured, Bell was in the process of shelving products he had delivered to Nash-Finch's warehouse.

Bell arrived at Nash-Finch's warehouse on June 28, 1994 and began unloading his truck at approximately 10:30 a.m. According to Bell, the receiving clerk at the warehouse generally is responsible for ensuring that the loading docks remain clear and the products are shelved properly. The warehouse was very busy on the day and at the time in question, and Bell had to assist in loading the products on the warehouse shelves.

In order to shelve the products properly, Bell was required to operate a pallet jack. A pallet jack is a motorized platform on which the

2

operator rides as he or she shelves the items. The jack has two metal protrusions ("arms") extending from its front, which allow the operator to lift the wooden pallets on which the products sit and put them on the appropriate shelves. Its platform is surrounded by metal railing for the protection and the support of the operator. Finally, the operator engages the pallet jack by moving its "T-bar" and stops the jack when the T-bar is returned to the upright position.

Bell was assigned pallet jack 107, which had been repaired five times over the two-year period before his use.[1] Some of the repairs merely required the replacement of parts, such as a solenoid or a potentiometer.[2] Serious repairs were made in October 1993, when the jack was run off of one of the loading docks and damaged. Those repairs required the replacement of several mechanical parts and the rewiring of the controls. None of the repairs made were to the motor that controlled the electric braking system.

Bell operated pallet jack 107 for approximately two hours before his accident. He testified that during that time, the manual brake malfunctioned but the electrical brake worked properly. Thus, he was able to stop the pallet jack by returning the T-bar to the upright position. Bell never reported the manual braking problem to any Nash-Finch official and there is no evidence that they otherwise knew of it.

Shortly before his accident, Bell determined that he could not sufficiently maneuver the jack to shelve the goods because the warehouse isles were crowded. Therefore, he stepped off of the riding platform and began to operate the jack from the floor of the warehouse. He

_____

[1] The jack also was repaired several months after his accident for mechanical problems unrelated to the electric motor or the hazard (failure to stop) at issue here. Finally, more than a year after the accident, it was scrapped. See J.A. at 122.

[2] The record shows that the solenoid was replaced on February 19, 1992. See J.A. at 111. The SCR, which affects the drive motor, was replaced in April 1992. See J.A. at 112. The potentiometer, which is a device that measures electromotive forces, see WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1775 (1993), was replaced in December 1992. See J.A. at 113.

3

operated the jack by standing behind it and guiding it to the desired location.

At approximately 12:30 p.m., Bell was operating the jack in this manner and was backing up to continue shelving the goods. While doing so, he backed into the bright yellow beam behind him. When he pushed the T-bar into the upright position, it did not stop as it had all morning. As a result, Bell's foot was crushed between the jack and the beam. He then filed the instant lawsuit.

II.

We review de novo the grant of judgment as a matter of law pursuant to FED. R. CIV. P. 50(a). See In re Wildwood Litigation, 52 F.3d 499, 503 (4th Cir. 1995). In doing so, we view the evidence and all reasonable inferences in the light most favorable to the nonmovant. See id. The dispute is governed by Virginia law, as Erie v. Tompkins, 304 U.S. 64, 78 (1938), directs us to apply the law of the forum state in diversity matters.

A. Actual Notice

The district court concluded that the records showing that the pallet jack in question had been repaired on five occasions prior to the accident were insufficient to establish either actual or constructive notice to Nash-Finch that the particular problem at issue here -- an alleged failure of the electrical system that prevented the machine from shutting off -- existed. Moreover, Bell had not told Nash-Finch that he had been experiencing a problem all morning with the manual braking system. As that was the only evidence presented on the notice issue (i.e., the repair records and Bell's testimony), Bell could not establish a prima facie case of premises liability.

The parties do not dispute that under Virginia law, Bell was a business invitee. See Marin v. Myers, 665 F.2d 57, 58 (4th Cir. 1981) (interpreting Virginia law). A property owner owes an invitee a duty of reasonable care and is liable for the invitee's injuries if they are caused by dangerous conditions about which the owner knew or should have known. See Roll "R" Way Rinks v. Smith, 237 S.E.2d 157,

4

161 (Va. 1977). To recover for his injuries, then, Bell must show that Nash-Finch had actual or constructive notice of the dangerous condition -- i.e., the failure of the jack to shut off when the electric braking mechanism was activated. See Franconia v. Clark , 463 S.E.2d 670, 673 (Va. 1995).

The record reveals that Nash-Finch had no actual knowledge of the problem at issue. None of Bell's evidence suggests that Nash-Finch had actual knowledge of the specific defect (i.e., a defective motor that failed to disengage when the T-bar was placed in an upright position). First, Bell admitted that the problem with the motor occurred for the first time during his use when he had the accident. Until that point, he had used the jack all morning and had been able to stop it successfully. Second, Bell presented no evidence that specifically related to the type of electrical problem of which he now complains. There are no complaints that the T-Bar failed to disengage the motor when placed in the upright position, nor are there repair records indicating a repair of an electrical problem with the motor. As a result, we cannot conclude that Nash-Finch had actual notice of the defective condition.

B. Constructive Notice

Even if actual notice is lacking, liability may still be established if Nash-Finch had constructive notice of the defective condition. See Roll "R" Way Rinks, 237 S.E.2d at 161. Bell contends that such notice is present. He points to five repairs to the jack between February 1992 and June 1994 -- including a major repair on October 19, 1993 requiring the replacement of the steering yoke, handle, knuckle and roll pin and adjusting the brakes -- and argues that they are sufficient to show that Nash-Finch had constructive notice of the defective condition. He argues that a history of danger on the premises gives the owner constructive notice of latent defects that must either be repaired or warned of and cites Appalachian Power Co. v. Sanders, 349 S.E.2d 101, 103-04 (Va. 1986).

However, that contention fails for several reasons. First, the defective condition did not exist long enough to give Nash-Finch reasonable notice of it. Under Virginia law, the invitee may hold the owner liable under a constructive notice theory only where the dangerous

5

condition has "`existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it.'" Roll "R" Way Rinks, Inc. v. Smith, 237 S.E.2d 157, 161 (Va. 1977) (citing Cannon v. Clarke, 167 S.E.2d 352, 355 (Va. 1969)). Here, Bell himself admitted that the electric braking system properly engaged all morning and did not fail until he had his accident. There were no prior reports to Nash-Finch of the failure of the electric braking system or that the jack failed to disengage for some other reason. There was no other evidence that Nash-Finch had some reason to know that the jack would not stop when the T-bar is returned to the upright position. Therefore, Bell simply cannot establish that the condition existed for a sufficient amount of time to give Nash-Finch notice of the problem or that Nash-Finch could have discovered the problem with a reasonable inspection.

Second, the repairs introduced by Bell are unrelated to the defective condition at issue. Bell introduced repair records of five repairs made in the two-year period prior to his accident. While some are serious -- the October 19, 1993 repairs required the replacement of many parts and the rewiring of the controls -- none have been shown to have had any relation to the failure of the motor to disengage. In fact, Bell does not argue that any of the repairs had a specific relationship to the defect. Rather, he maintains that because the jack required some electrical work a year or more before his accident, a future unrelated, "unpredictable" electrical problem was foreseeable. See Appellant's Br. at 8.

However, Virginia law does not permit us to draw such conclusions. Virginia's courts require foreseeability of the hazard. See Freeman v. Case Corp., 118 F.3d 1011, 1014-15 (4th Cir. 1997) (interpreting Virginia law). For example, in Roll "R" Way Rinks, the plaintiff was injured when he fell on a metal ramp leading to the rink floor. See id. at 159. The rink owner previously had made many temporary repairs to the exact part of the ramp that caused the safety hazard. See id. at 162. As a result, he had constructive, if not actual, knowledge of the hazard and was held liable. See id. Similarly, in Franconia Assocs. v. Clark, 463 S.E.2d 670, 673 (Va. 1995), the plaintiff, an employee of a hair salon in the defendant's shopping mall, was injured while chasing a thief through an outer door of the mall. See id. Two weeks prior to the incident, other mall patrons had

6

trouble with the door, which sprang back too quickly. See id. at 673. The defendant's maintenance personnel checked the door during the two-week period before the accident for just such a reaction as that which injured the plaintiff. See id. Therefore, the defendant had constructive notice of the hazard.

Those cases present far different factual scenarios than the instant case. The defendants in those cases were well aware of the hazards faced by their invitees because the hazards surfaced prior to the respective accidents. By contrast, the hazard at issue here surfaced only an instant before the accident, according to the injured party himself. Until then, there had been no warning that the electric motor would fail to disengage the jack. On that record, we cannot conclude that Nash-Finch had any notice of a dangerous condition that could subject them to liability in negligence.**3**

III.

Bell also has appealed the district court's refusal to admit evidence of subsequent repairs made to the jack before its eventual retirement more than a year after the accident. Bell argues that they are relevant to the negligence issue. The district court's decisions to admit or exclude evidence are reviewable for abuse of discretion. See Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108 (4th Cir. 1993).

The district court's exclusion of the evidence was not an abuse of its discretion. Under Fed. R. Evid. 407, subsequent remedial measures are inadmissible if offered "to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." Id. Thus, to the extent that Bell offers the subsequent repairs to establish Nash-Finch's negligence, they are inadmissible, and it was not an abuse of discretion to exclude them.

Moreover, the subsequent repairs are irrelevant to whether Nash-Finch had notice of the defective condition. Since Bell's accident is

_____

**3** We also note that Bell has referred to Nash-Finch's negligence in failing to affirmatively inspect, repair and maintain the jack. However, Bell has presented no evidence that the repairs made were tardy, or that the jack was not otherwise maintained.

7

the first reported incident involving that hazard, reports of repairs to the jack following Bell's accident that are unrelated to the hazard do nothing to establish or disprove that Nash-Finch knew or had reason to know of the defect or hazard before Bell was injured. Therefore, the evidence also could have been excluded as irrelevant. See FED. R. EVID. 402 (stating that irrelevant evidence is not admissible).

CONCLUSION

In short, Bell suffered a terrible, unfortunate accident. However, he has not established a prima facie case of premises liability against Nash-Finch because he cannot establish that the company had either actual or constructive notice of the hazard. Moreover, the subsequent repair records are not admissible. In light of our conclusion here, we need not reach the contributory negligence issue raised below. Accordingly, the judgment is hereby

AFFIRMED.

8