## CIRCUIT COURT OF THE CITY OF ROANOKE

Amy.S. Jenkins

v.

Daniels Institute
of Holistic Health, Inc.

July 7, 2003

Case No. CL00-1401

By Judge Clifford R. Weckstein

In this suit for personal injuries, plaintiff Amy S. Jenkins alleges, among other things, violation of the Uniform Statewide Building Code ("USBC"). The defendant, Daniels Institute of Holistic Health, Inc., has demurred to the claims under the USBC, contending that, because it was a tenant, and not the owner, of the building in which Ms. Jenkins was injured, it cannot be liable to her for building code violations.[1] For the reasons that follow, I overrule the demurrer.

A demurrer tests whether the plaintiff's factual allegations are sufficient to permit her to maintain a claim, not whether she will prevail on the merits of

---

[1] Noting that the plaintiff's amended motion for judgment contained no express allegation about ownership of the building, Daniels Institute also filed a motion to dismiss, so that, if the issue could not be reached by demurrer, it could be considered "once it is established factually that the defendant did not own the premises in question." *Defendant's Motion to Dismiss* at 2. That is not in issue. In response to Requests for Admission, Ms. Jenkins admitted that the defendant "does not own and did not own on February 18, 1999," the date of the injuries, "the real estate or improvements located at 2329 Franklin Road, S.W., City of Roanoke, Virginia," and that the defendant "only occupied the real estate and improvements. . . ." Since that is not an issue, the court decides the question on demurrer.

that claim. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128, 540 S.E.2d 123 (2001); *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d· 181 (1993); Virginia Code § 8.01-273. In ruling on the demurrer, I must accept as true the statements of fact in the plaintiff's amended motion for judgment, any facts alleged by implication, and any facts that fairly might be inferred from her pleading; I must recite the facts of the case as Ms. Jenkins stated them in her pleading. *Woods v. Mendez*, 265 Va. 68, 76, 574 S.E.2d 263 (2003); *Fueste v. Riverside Healthcare Ass'n*, 265 Va.127, 131-32, 575 S.E.2d 858 (2003); *Delk v. Columbia HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000).

On February 18, 1999, Ms. Jenkins was a student in a massage therapy school that Daniels Institute operated and thus a business visitor on the defendant's premises. Having been instructed to do so, she was descending a wooden stairway in her stocking feet. The surface of the steps was slick, and her foot slipped on this slick surface. This caused her to fall and sustain severe injuries. The stairway did not comply with applicable USBC standards, including, *inter alia*, standards governing handrails, slip-resistant material, and the "minimum static coefficient of friction." Daniels Institute, the parties agree, occupied, but did not own, the building. At least by fair inference, Daniels Institute had control of the building.

The plaintiff's USBC claim is based on the concept of negligence *per se*. "The requirements for proving a claim of negligence *per se* are well established. First, a plaintiff must establish that the defendant violated a statute that was enacted for public safety. Second, the plaintiff must prove that he belongs to the class of persons for whose benefit the statute was enacted and that the harm that occurred was of the type against which the statute was designed to protect. Third, the plaintiff must prove that the statutory violation was a proximate cause of his injury." *Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77, 523 S.E.2d 823 (2000) (citations omitted).

"The dominant purpose of the [Uniform Statewide] Building Code ... is to provide comprehensive protection of the public health and safety. We must construe the Building Code broadly enough to give substantial effect to this manifest legislative purpose. ..." *VEPCO v. Savoy Constr. Co.*, 224 Va. 36, 44, 294 S.E.2d 811 (1982). "Violation of the Building Code, like the violation of any statute enacted to protect health, safety, and welfare, is negligence *per se.*" *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 69, 387 S.E.2d 760 (1990) (citing *Savoy*, 224 Va. at 45); *cf.* Va. Code § 36-99(A). Manifestly, building code requirements for stairways, including height and handrail

requirements, are aimed at preventing injuries from slips and falls. *Cf. Perry v. Medeiros*, 369 Mass. 836, 343 N.E.2d 859, 862 (1976); *Lamm v. Bissette Realty, Inc.*, 94 N.C. App. 145, 379 S.E.2d 719, 721 (1989).

According to the regulations promulgated by the Board of Housing and Community Development pursuant to the requirements of Va. Code § 36-97, the purpose of the USBC's construction standards "is to ensure safety to life and property from all hazards incident to structure design, construction, occupancy, repair, removal, or demolition." 13 VAC 5-61-15 § 102.0. "The purpose of [the building maintenance provisions of the USBC] is to ensure public safety, health and welfare through proper building maintenance, repair, use, and continued compliance with minimum standards of building construction, energy conservation, water conservation, and physically handicapped and aged accessibility. Proper building maintenance and repair shall be deemed to include the maintenance, repair, testing, and inspection of equipment as defined by the Uniform Statewide Building Code (§ 36-97 et seq. of the Code of Virginia)." 13 VAC 5-61-121 § 123.2.

Daniels Institute's demurrer argues that "the occupier of business premises, not the owner, [cannot] be held liable in damages on a theory that it violated a provision of the Uniform Statewide Building Code." *Memorandum of Law in Support of Defendant's Demurrer and Motion to Dismiss* (hereafter *"Def. Mem."*) at 3-4. While the Supreme Court of Virginia has not addressed the precise question raised by the demurrer, I believe that the Court's decision in *Wohlford v. Quesenberry*, 259 Va. 259, 523 S.E.2d 821 (2000), is controlling.

*Wohlford* was a residential landlord-tenant dispute. The tenant failed to pay her rent, the landlord brought suit for unlawful detainer, and the tenant counterclaimed. Alleging that the roof leaked and the furnace malfunctioned, she asserted that both conditions caused damage to her personal property and that soot and fumes from the malfunctioning furnace caused personal injury to her. *Id.*, 259 Va. at 260. "The tenant contended that the landlord's duties of maintenance and repair of the defective conditions in the premises arose under [the maintenance code that is] a part of the codes and regulations adopted by the Board of Housing and Community Development (the Board) pursuant to Va. Code § 36-98. Accordingly, the tenant contended that the landlord was guilty of negligence *per se* in her violations of the code provisions."[2] *Id.*

[2] Va. Code § 36-98 provides, in part, that "the Board is hereby directed and empowered to adopt and promulgate a Uniform Statewide Building Code. Such building code shall supersede the building codes and regulations of the counties, municipalities, and other political subdivisions and state agencies."

(footnote omitted). The trial judge sustained the landlord's demurrer to the counterclaim; the Supreme Court affirmed that decision. *Id.*

The common law rule in Virginia, as the parties in *Wohlford* agreed, "is that a tenant who has exclusive possession and control of a premises, absent an agreement to the contrary, is responsible for its maintenance and repair." *Id.* at 260 and 261. The Court rejected the tenant's argument that the USBC shifted those responsibilities to the landlord. The Court acknowledged that under the USBC, the "owner" is responsible for assuring both that "fuel burning appliances shall be properly installed and maintained in a safe working condition" and that "the roof and flashing shall be sound, tight, and not have defects that admit rain." *Id.* at 261. However, the Court noted, "the term 'owner' is defined in Va. Code § 36-97 and in the BOCA Code [USBC.]" " 'Owner' means the owner or owners of the freehold of the premises or lesser estate therein, a mortgagee or vendee in possession, assignee of rents, receiver, executor, trustee, or *lessee in control of a building or structure."* *Id.* at 261, n. 1 (emphasis added by the Supreme Court). "Because the tenant was the person in control of the premises, not the landlord, the tenant is the defined 'owner' under the facts of this case, and the tenant has the maintenance and repair responsibilities claimed." *Id.* at 262.

While, as Daniels Institute vigorously points out, the facts of this case are not those of *Wohlford*, it cannot be doubted that in *Wohlford*, Virginia's court of last resort held tenants or lessees who, like Daniels Institute, are in control of a building have that the maintenance and repair responsibilities that the Building Code imposes upon an "owner." Though the defendant's construction of the scope of the USBC is neither strained nor unreasonable, it is inconsistent with the Supreme Court's admonition that courts "must construe the Building Code broadly enough to give substantial effect to [the USBC's] manifest legislative purpose" of "providing comprehensive protection of the public health and safety." *Savoy*, 224 Va. at 44. The court therefore overrules the defendant's demurrer and denies its motion to dismiss.

Contrary to the defendant's contention, this decision seems to me consistent with pre-*Wohlford* Virginia jurisprudence. "A lessee, as possessor and occupant of the leased premises, owes the same duty to its invitees as an owner owes to its own invitees. Each is chargeable with constructive as well as actual knowledge of the condition of the property." *Appalachian Power Co. v. Sanders*, 232 Va. 189, 194, 349 S.E.2d 101 (1986) (citations omitted). "Ms. Jenkins," Daniels Institute argues, "could certainly have named the landlord of the premises as a defendant. For whatever reason she chose not to do so, but

failing to name a party defendant does not transfer that defendant's liability to other defendants." *Def. Mem.* at 9. In *Sanders*, however, the Court effectively held that "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." *Id.* at 192 (quoting *Restatement (Second) of Torts*, § 359 (1965)); *accord, Oliver v. Cashin*, 192 Va. 540, 65 S.E.2d 571 (1951). Some jurisdictions recognize an exception to that general rule in cases in which the property owner knows that the lessee intends to admit the public to the leased premises, *Sanders*, 232 Va. at 193, but our Supreme Court has "never adopted [such an] exception." *Id.* "We believe the superior duty to protect the public rests upon the lessee. . . ." *Id.;* *cf. generally*, W. E. Shipley, *Annotation, Modern Status of Landlord's Tort Liability for Injury or Death of a Tenant or Third Party Caused by Dangerous Conditions of Premises*, 64 A.L.R.3d 339 (2002); Michael J. Davis & Phillip E. DeLeTorre, *A Fresh Look at Premises Liability as Affected by the Warranty of Habitability*, 59 Wash. L. Rev. 141 (1984).

Citing *Smith v. Wolsiefer*, 119 Va. 247, 89 S.E. 115 (1916), the defendant complains of the absence of "an allegation or proof that Daniels Institute knew or should have known of the alleged building code violations." *Def. Mem.* at 6. Under Rule 3:16, however, the plaintiff's allegation of negligence "is sufficient without specifying the particulars of the negligence"; the demurrer of course addresses the plaintiff's allegations, not her proof. *Fun v. Virginia Military Inst.*, 245 Va. at 252. And, though the defendant asks that the court "please note that the alleged building code violations in this case are extremely technical in nature," *Def. Mem.* at 6, I must of course consider the amended motion for judgment in the light most favorable to the nonmoving party, Ms. Jenkins, the plaintiff. *Fueste*, 265 Va. at 130.