**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1049**

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

Plaintiff - Appellant,

v.

ANTONELLI, TERRY, STOUT & KRAUS, LLP; DONALD E. STOUT, Esq.,

Defendants – Appellees,

and

ADRIENNE ANDROS FERGUSON, individually and on behalf of THE ESTATE OF ANDREW A. ANDROS; EMILY J. ANDROS, individually and on behalf of THE ESTATE OF ANDREW A. ANDROS; JULIA LYNN ANDROS, individually and on behalf of THE ESTATE OF ANDREW A. ANDROS; PENELOPE J. ANDROS, individually and on behalf of THE ESTATE OF ANDREW A. ANDROS; JOHN S. RICHARDS; ABBAS YOUSEF; MIRSUL INVESTMENTS S.A.; IMPORTECHNO INTERNATIONAL INCORPORATED,

Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:08-cv-01020-LO-TCB)

Argued: October 28, 2009          Decided: December 4, 2009

Before MOTZ and GREGORY, Circuit Judges, and Benson E. LEGG, Chief United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Motz and Judge Legg joined.

**ARGUED:** Danny Mark Howell, SANDS, ANDERSON, MARKS & MILLER, McLean, Virginia, for Appellant. Lon Arthur Berk, HUNTON & WILLIAMS, LLP, McLean, Virginia, for Appellees. **ON BRIEF:** Brian J. Gerling, HUNTON & WILLIAMS, LLP, McLean, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

On December 15, 2008, the United States District Court for the Eastern District of Virginia dismissed a declaratory judgment action brought by Appellant Minnesota Lawyers Mutual Insurance Company ("MLM"). Based on the test this Court set forth in Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994),[1] the district court found that the suit would create unnecessary entanglement with a pending state court action in Florida, that Florida had a strong interest in the suit, and that the Florida court could resolve the issue more efficiently. For the reasons set forth below, we reverse the decision of the district court and remand for further proceedings consistent with this decision.


I.

A.

MLM issued a professional liability policy ("the Policy") to the Virginia law firm of Antonelli, Terry, Stout & Kraus, LLP ("the Firm") for the period October 25, 2007 through October 25, 2008 against "all sums up to the limit of [MLM's] liability,

_____

[1] The section of Nautilus involving the appellate standards of review was overruled by the Supreme Court in Wilton v. Seven Falls Co., 515 U.S. 277 (1995). However, the factors articulated which guide the district court's exercise of discretion in a declaratory judgment action remain applicable.

which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM . . . resulting from the rendering [of] . . . PROFESSIONAL SERVICES while engaged in the private practice of law." (J.A. 24.)[2] On July 25, 2008, a second amended complaint was filed in Ferguson v. Stout, Case No. 08-09767CA40, a case pending in the Circuit Court of the Eleventh Judicial District in Miami-Dade County, Florida. The second complaint, naming the Firm and one of its partners, Donald Stout, as defendants, alleged that the Firm and Stout conspired to cheat the Florida plaintiffs out of valuable rights to patents and technology ("Wireless Email Technology").

One cause of action alleges that Stout and the Firm induced the Florida plaintiffs to give up their interest in the Wireless Email Technology so that the patents could be transferred to NTP, Inc., a company controlled by Stout and owned in part by Stout and members of the Firm. (J.A. 180, 189-90 ¶¶ 68, 96.) Specifically, the Firm and Stout were retained to provide legal services to Telefind Corporation and some of its investors. (J.A. 169-70 ¶¶ 29-30.) Stout "devised a legal strategy that he

---

[2] Citations herein to "(J.A. ___)" refer to the contents of the Joint Appendix filed by the parties in this appeal.

We consolidate and summarize the facts set forth in the complaint and the Policy; of course, our account of the facts does not constitute a finding of fact binding any court or party on remand.

told [the Florida plaintiffs] would legally protect Telefind investors' interest in" the Wireless Email Technology during anticipated bankruptcy proceedings. (J.A. 176 ¶ 52.) This "strategy" involved distinguishing between patents relating to Wireless Email Technology and patents relating to paging technology, which is a distinction Stout said was legal. (J.A. 176 ¶¶ 53, 56.) To "implement this strategy," Stout advised the plaintiffs not to "document[] any direct ownership interest in the Wireless Email Technology" to protect it from Telefind's creditors. (J.A. 177 ¶ 57.) NTP was formed and patents for the Wireless Email Technology were transferred to that corporation. (J.A. 180 ¶ 68.) The complaint alleges that Stout falsely promised that the Florida plaintiffs would share future benefits from the technology. Thereafter, NTP sued Research in Motion, Ltd. for patent infringement, settling that case for $613 million. At that time, the Florida plaintiffs alleged they had no documented interest in the patents because they had relied upon Stout's advice and thus could not share in the settlement. The plaintiffs then sued the Firm and Stout in Florida.

B.

On August 15, 2008, the Firm provided MLM a copy of the Second Amended Complaint. After promising to "provide Mr. Stout and the law firm with a defense to the Complaint" (J.A. 206), MLM sought a declaratory judgment in district court that there

5

was no duty to defend or indemnify the Firm and Stout against the Florida claims. Specifically, the declaratory judgment based on the allegations of the Second Amended Complaint, asserted that (1) coverage was excluded pursuant to Exclusion 3 of the Policy:

> any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise: (a) owned in whole or part; (b) controlled directly or indirectly; or (c) managed, [b]y INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business or enterprise

(J.A. 26); (2) coverage was excluded based on the Policy's Specific Entity Exclusion Endorsement, which excluded any claim resulting from any act, error or omission arising out of rendering or failing to render professional services to or on behalf of NTP; (3) the allegations were not within the Policy's coverage because the alleged damages did not result from the rendering or failure to render professional services, as required by Part Two of the Policy's Coverage Section; and (4) in the alternative, that MLM had no duty to defend Stout because he failed to comply with the Policy's requirement of immediate notice.

On December 15, 2008, the district court dismissed without prejudice the declaratory judgment action. The court based its two-page oral decision (J.A. 232-33) on the first three

6

"Nautilus factors," which are used "[t]o determine whether to proceed with a federal declaratory judgment action when a parallel state action is pending." Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004). The four factors are:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998) (quoting Nautilus, 15 F.3d at 377).

## II.

According to the Declaratory Judgment Act, a district court with proper jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2006). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). Therefore,

7

this Court reviews for abuse of discretion the district court's decision to not hear a federal declaratory judgment action. Regarding this discretion,

> district courts are not without guidance . . . . We have explained that a declaratory judgment "is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

Kapiloff, 155 F.3d at 493 (quoting Centennial Life Ins. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996)) (alterations in original).

## III.

MLM argues that the district court erred in concluding that it would be necessary to find facts being litigated in the pending Florida proceeding, thus creating unnecessary entanglement in violation of the third Nautilus factor. According to MLM, the court was only being asked to interpret the contractual language of the insurance policy to determine whether the allegations before the state court fell within the Policy. Thus, entanglement would not occur. Indeed, MLM asserts that entanglement could not occur because Virginia law does not permit the court to look beyond the allegations. MLM further claims that because the district court was fundamentally mistaken about what could be litigated under Virginia law, it

also erred in its analysis of the remaining Nautilus factors. We agree.

## A.

MLM first argues that the district court misapplied our decision in Coffey when it found that the declaratory judgment action would lead to entanglement with the Florida suit due to overlapping issues of fact. This Court in Coffey found that "[u]nder Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" Coffey, 368 F.3d at 413 (quoting Brenner v. Lawyers Title Ins. Corp., 397 S.E.2d 100, 102 (Va. 1990)). This principle is referred to as the "four corners rule." See Travelers Property Cas. Ins. Co. v. Bruner, No. 3:07CV463-HEH, 2007 WL 3143333, at *2 (E.D. Va. Oct. 25, 2007). Based on the four corners rule, this Court found that "the duty-to-defend question . . . [does] not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the plaintiff] has alleged in the state court action with the language of the [provider's] insurance policy." Coffey, 368 F.3d at 413. Therefore, "there is no duty to defend 'if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations.' Brenner, 397 S.E.2d at 102 (emphasis

9

added)."  Id.  The district court was being asked only to "decide the scope of the contractual language" of the insurance policy, and it was "not necessary to resolve" factual issues "before defining the scope of the contract's" exclusion clause at issue.  Id. at 414.

Here, the district court faced the same question at issue in Coffey:  whether the allegations before the state court fell within the scope of Exclusion Three or the Specific Entity Exclusion of the Policy and whether those same allegations sought damages "resulting from the rendering or failure to render professional services."[3]  With this question, the district court committed the same error as the district court did in Coffey.  It presumed that determining the duty to defend depends on the actual outcome of the state litigation.  Instead, the district court, following Virginia law, should have decided whether the allegations in the state complaint were within the scope of the insurance policy.  Therefore, the district court

---

[3] In fact, the counsel representing MLM stated before the court that "[i]f it is not set forth in the pleadings so clearly that it's outside the policy, then we have a duty to defend because the duty to defend means that there is a potentiality based on the pleadings coverage under the policy.  And that is the start and end of the inquiry.  We are not allowed, we are not permitted as a matter of law to go beyond that."  (J.A. 229-30.)

10

erred when it found that determination of facts was necessary, or even possible, in order to determine MLM's duty to defend.

The Firm and Stout argue that "MLM is forcing the Antonelli Law Firm and Mr. Stout to prove the contrary—to prove precisely what the Florida claimants allege—or to forfeit any possibility of MLM's coverage." (Appellees' Br. 15.) This assertion rests on the false premise that proving the facts underlying the Florida suit is necessary. Instead, the district court is bound by Virginia law to take the pleadings in the state suit as true and apply those against the insurance policy. Essentially, this task involves the interpretation of contractual language and nothing more. Thus, no entanglement with the facts and issues in the state proceeding would have occurred.

Regarding the remaining three Nautilus factors, only two were relied upon by the district court: "(1) whether the state has a strong interest in having the issues decided in its courts [and] (2) whether the state courts could resolve the issues more efficiently than the federal courts[.]" Kapiloff, 155 F.3d at 493-94. The district court erred in analyzing these factors because it was fundamentally mistaken about what could be litigated under Virginia law, as we have determined above. The district court found that "Florida has a strong interest in the issues that are to be decided there. The case is about . . . legal malpractice, fraud perpetrated . . . and that advice given

to clients." (J.A. 232.) The court also found that Florida courts could resolve the issue more efficiently, thus avoiding piecemeal litigation.

In support of its use of the state interest and efficiency factors, the district court relied on this Court's decision in New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290 (4th Cir. 2005). In New Wellington, while a suit was pending against it in New Jersey state court based on an alleged violation of New Jersey law, New Wellington, a Virginia corporation, sought a declaratory judgment in the Western District of Virginia that no agency relationship existed between the parties and that it owed no money to the state plaintiffs. Id. at 292. "The parties agree[d] that the conduct underlying the two cases [was] identical." Id. at 293. This Court then used several of the Nautilus factors to uphold the district court's decision to dismiss the declaratory judgment action. Id. at 297-98. Specifically, we found that

> First, we agree with the district court that New Jersey has a strong interest in having the dispute resolved in its courts. The conduct at issue in these two suits involves and concerns New Jersey companies, writing letters from New Jersey, regarding loans for New Jersey property. In addition to the parties, actions, and property implicated, [the] . . . complaints in the New Jersey suit exclusively involve claims based in New Jersey state law, several of which can fairly be called complex . . .
>
> Second, the New Jersey state court can resolve the matter more efficiently. . . . Besides the parties

12

> present in New Jersey and absent here, it is easy to believe that the New Jersey state court could resolve the New Jersey state law issues alleged by Flagship and Atlantic Palace more efficiently than could a federal court sitting in Virginia.

Id.

The district court's reliance on New Wellington is misplaced for several reasons. First, in New Wellington, a district court in Virginia was being asked to decide issues of New Jersey law. We therefore appropriately determined that the application of out-of-state law, combined with missing parties, allowed the district court to reasonably exercise its discretion not to hear the action. In contrast, here the U.S. District Court for the Eastern District of Virginia was asked to interpret Virginia law, and the pending suit is in Florida. It is unreasonable to conclude that a Florida state court is a better arbiter of Virginia law than the Eastern District of Virginia. The Eastern District of Virginia has found that it "is accustomed to applying Virginia law in declaratory judgment actions." Penn-America Ins. Co. v. Mapp, 461 F. Supp. 2d 442, 451 (E.D. Va. 2006). Additionally, this Court found in Coffey that state interest is strongest when it is applying its own law and that the efficiency concern is not present when "the contractual coverage issue will not be decided by the state . . . case." 368 F.3d at 414. Florida has no strong interest in the coverage issue to be determined under Virginia law, and

13

the fundamental issue of whether the allegations in state court trigger the duties to defend and indemnify will not be decided in the Florida litigation.

Second, in New Wellington, the district court was asked to decide the same issues at play in the state court based on identical conduct. 416 F.3d at 293. Namely, New Wellington "sought a declaratory judgment [in federal court] that no agency relationship existed between the parties" based on the exact same conduct underlying the state suit. Id. at 292. In the state suit, the parties Flagship and Atlantic Palace sought to prove that New Wellington was their agent in order to succeed on their claims. Id. at 293. The overlap between the two cases raised efficiency concerns. In the case before this Court today, such efficiency concerns are not present. While the conduct of Stout underlies both the Florida suit and the declaratory judgment action, the Florida suit is an action involving fraud, contract law, and possibly malpractice. In the declaratory judgment action, these issues were not before the district court. The district court was only faced with a contractual coverage issue. Piecemeal litigation would therefore not result from the district court deciding the coverage issue because the scope of coverage is not at issue in the state proceeding. Thus, the district court erred in relying

14

on the Nautilus factors of state interest and efficiency to dismiss MLM's declaratory judgment action.

## B.

The Firm and Stout argued before the district court that even if the duty to defend is able to be determined before a determination in the state suit, this could not be done for the duty to indemnify. We disagree.

"The insurer's obligation to defend is broader than its obligation to pay." Brenner, 397 S.E.2d at 102. Consequently, in the absence of any assertions in the state court proceeding that could result in damages covered under the Policy, there cannot be a duty to defend, and thus no duty to indemnify. This Court has spoken on this point directly:

> Although an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the policy's coverage.

Coffey, 368 F.3d at 413. Therefore, the district court erred in failing to find that it may be able to resolve the duty to indemnify after deciding the duty to defend.

## IV.

Because the district court abused its discretion by dismissing MLM's declaratory judgment action based on the Nautilus factors, we reverse the decision of the district court

15

and remand for further proceedings consistent with this decision.

REVERSED AND REMANDED