Mark S. Davis, CHIEF UNITED STATES DISTRICT JUDGE
This matter is before the Court on a motion filed by Defendant-Intervenor Bryan Polli ("Polli") to set aside the entry of default against Defendant White Pines, Inc. doing business as L.A.'s Night Club ("White Pines"), which has not appeared in the matter. For the reasons stated below, Polli's Motion to Set Aside Entry of Default is DENIED. In addition, Plaintiff Penn-America Insurance Company ("Penn-America") is ordered to show cause within ten (10) days after the entry of this Order as to why the Court should exercise jurisdiction over this matter.
I. FACTUAL AND PROCEDURAL HISTORY
The Court assumes the parties' familiarity with the underlying facts and procedural history as set forth by the memorandum opinion from the Richmond Division of the Court granting the motions to intervene and transfer venue. Penn-America Insurance Company v. White Pines, Inc. d/b/a L.A.'s Night Club, No. 3:18cv650, 2019 WL 418859 (E.D. Va. Feb. 1, 2019).
Polli worked as a manager at L.A.'s Night Club in Virginia Beach; L.A.'s Night Club is owned and operated by White Pines. Id. at *1. Polli purportedly suffered injuries following an altercation at the club *648 on March 22, 2016. Id.; State Court Complaint, ECF No. 1-1, Ex. A ¶ 12.
On March 22, 2018, Polli filed a lawsuit in the Circuit Court for the City of Virginia Beach against White Pines. Penn-America Insurance Company, 2019 WL 418859 at *1. After Polli filed his complaint in Virginia Beach Circuit Court, White Pines contacted Penn-America requesting coverage under a commercial general liability policy Penn-America issued to White Pines. Id. On May 31, 2018, Penn-America denied coverage under the policy. Id. On August 28, 2018, Polli also sent a demand letter to Penn-America asserting that coverage for White Pines applied to his injury and requesting coverage and damages. Id. at *2. On September 11, 2018, Penn-America responded to Polli's demand by denying coverage. Id. On that same day, Polli notified Penn-America of his intention to file a declaratory judgment action to resolve the matter, and requested a complete copy of the policy. Id.
On September 24, 2018, Penn-America filed its own declaratory judgment action against White Pines in this Court's Richmond Division. Compl., ECF No. 1. Penn-America seeks a declaration that it has no duty to defend or indemnify White Pines. Penn-America Insurance Company, 2019 WL 418859 at *1. Penn-America did not notify Polli prior to filing this action and did not send Polli a copy of the policy. Id. at *2.
White Pines was properly served with the summons and Complaint under Virginia Code §§ 8.01-299(3) and 8.01-296(2) (b) as permitted under Fed. R. Civ. P. 4(h) (1) (A), which permits service on corporations following state law in the state where the district court is located or where service is made. ECF No. 5. White Pines failed to respond to the Complaint by October 29, 2018. Penn-America Insurance Company, 2019 WL 418859 at *2. On November 1, 2018, Penn-America requested the clerk to enter default against White Pines based on White Pines' failure to respond to the Complaint. Id.; ECF No. 7. On November 16, 2018, the clerk entered default against White Pines. ECF No. 8. On November 29, 2018, thirteen days after the clerk entered default against White Pines in this matter, Polli learned of Penn-America's declaratory judgment action. Penn-America Insurance Company, 2019 WL 418859 at *2.
On December 5, 2018, Polli filed a Motion to Intervene, a Motion to Transfer, and the Motion to Set Aside Entry of Default. Id.; ECF Nos. 9-11. Polli attached to the Motion to Intervene a Proposed Answer and Counterclaim. Penn-America Insurance Company, 2019 WL 418859 at *2 ; ECF No. 9. In his Proposed Answer and Counterclaim, Polli seeks a declaration that under the terms of the Policy, Penn-America has a duty to defend and a duty to indemnify White Pines in connection with the case Polli filed in the Virginia Beach Circuit Court. Penn-America Insurance Company, 2019 WL 418859 at *2 ; ECF No. 9.
Penn-America responded to the Motion to Transfer and the Motion to Set Aside Entry of Default, but did not file a response to the Motion to Intervene. Penn-America Insurance Company, 2019 WL 418859 at *2 ; ECF Nos. 12-13. On February 1, 2019, the Court granted the motion to intervene and the motion to transfer. Penn-America Insurance Company, 2019 WL 418859 at *5. Following that order, the case was transferred to this Court's Norfolk Division, reassigned to the undersigned, and a new case number designated.
II. DISCUSSION
A. Vacating Entry of Default
The instant motion presents an unusual procedural question that only a *649 handful of courts have addressed (and the parties' briefs ignore). Polli's motion to intervene was granted; he now seeks to vacate the entry of default against his co-defendant, White Pines. It is unclear whether a defendant-intervenor like Polli has standing to challenge the entry of default on behalf of the defaulting defendant. It is true that the text of Fed. R. Civ. P. 55(c) is silent on which party may move to set aside a default. See Fed. R. Civ. P. 55(c). However, the few courts that have found that a non-defaulting defendant has standing to seek to set aside an entry of default on behalf of a defaulting co-defendant require a close relationship between those defendants. See In re Uranium Antitrust Litig., 617 F.2d 1248, 1256 n.32 (7th Cir. 1980) (allowing defendants, which were subsidiaries of defaulting parties, to challenge a default judgment as the non-defaulting defendants would be adversely affected by the default judgment and faced potential economic harm); United States v. Harvey, No. CIV. 13-4023-KES, 2014 WL 2455533, at *4 (D.S.D. June 2, 2014) (finding that non-defaulting individual defendant as the owner and alter ego of the defaulting corporation could challenge the entry of default); Diamond Servs. Corp. v. Oceanografia SA de CV, No. 10-0177, 2013 WL 312368, at *3 (W.D.La. Jan. 24, 2013) (finding that because the defendants were part of a single business enterprise, a non-defaulting co-defendant may challenge an entry of default against defaulting defendant). Such a relationship does not exist in this case. Polli alleges that he only worked as manager for White Pines; he was not a subsidiary or parent company of White Pines, the owner or alter ego of White Pines, and was not part of a single business enterprise with White Pines.
In any event, even if Polli had standing to challenge the entry of default against White Pines, the practical result would be the same. In Frow v. De La Vega, the Supreme Court explained that in a multi-defendant case where there is an entry of default against only one defendant, the proper course of action is to permit the non-defaulting parties to litigate the case while holding the entry of default in abeyance and deferring any final default judgment against the defaulting defendant. 82 U.S. 552, 554, 15 Wall. 552, 21 L.Ed. 60 (1872) ("[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike-the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). Courts have explained this is the proper course of action as neither the plaintiff nor the non-defaulting defendant is prejudiced; the litigation proceeds, and both parties may take discovery and present evidence and argument. However, the defaulting defendant must be sanctioned to a limited degree for its failure to appear. U. S. for Use of Hudson v. Peerless Ins. Co., 374 F.2d 942, 944 (4th Cir. 1967) ("The result is that ... the defaulting [party], has merely lost its standing in court and cannot participate in any subsequent trial of the claims against the contractor. But, as said in Frow v. De La Vega, 'if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike-the defaulter as well as the others.' ") (citing Frow, 82 U.S. at 554 ).
Further, "[a]lthough the rule developed in the Frow case applies when the liability is joint and several, it probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses. When that is the case, entry of judgment also should *650 await an adjudication of the liability of the nondefaulting defendants." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2690 (4th ed. 2019) ; see also 10 Moore's Federal Practice - Civil § 55.36 (2019) ("Frow stands for the narrow rule that a default judgment may not be entered against one of several defendants ... when the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant.... The Frow rule seeks to prevent inconsistent judgments in cases involving joint liability or joint remedies. Some courts have interpreted Frow more broadly to apply when defendants are 'similarly situated,' even if not jointly liable. Thus, when defendants are 'similarly situated[,]' judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits.") (emphasis added); see, e.g., Marshall & Ilsley Tr. Co. v. Pate, 819 F.2d 806, 812 (7th Cir. 1987) (" 'The result in Frow was clearly mandated by the court's desire to avoid logically inconsistent adjudications as to liability. However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the Frow rule is lacking.' ") (quoting In re Uranium Antitrust Litig., 617 F.2d at 1257-58 ); Neilson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520 (9th Cir. 2001) (finding "the bankruptcy court abused its discretion by certifying as final default judgments" where the result was inconsistent rulings as between defendants."). The Fourth Circuit has also applied the Frow rule beyond scenarios where defendants are subject to joint and several liability; in particular, the Circuit found that holding an entry of default in abeyance was proper when multiple claims or multiple parties are present in a case, and one party defaults. U. S. for Use of Hudson, 374 F.2d at 944 ("Although Frow was a case of joint liability, we think the procedure established for multiple defendants by Rule 54(b) is strikingly similar and applicable not only to situations of joint liability[.]").
This is a case where the defendants are similarly situated, and the Court must avoid logically inconsistent judgments. U. S. for Use of Hudson, 374 F.2d at 945. If declaratory judgment is granted in favor of Penn-America, neither Polli nor White Pines may recover money from Penn-America under the insurance policy. If declaratory judgment is granted in favor of Polli on his counterclaim, Polli and White Pines may obtain money from Penn-America (provided that Polli actually prevails on his underlying state tort claim against White Pines). However, if a default declaratory judgment was entered against White Pines (and White Pines could not recover under the policy), and Polli prevailed on the merits of his counterclaim (and Polli could recover under the policy), logically inconsistent judgments would result.
For the reasons explained above, Polli's motion to set aside the entry of default is denied because of 1) Polli's lack of standing to bring a motion to set aside the entry of default against White Pines, a co-defendant that is not closely linked to Polli, and 2) the Supreme Court's decision in Frow, which precludes a final default judgment and permits the non-defaulting parties to proceed with the litigation. However, because of the unique procedural posture of this case presented by the apparent race to the courthouse between Penn-America and Polli, the Court feels compelled to address the obvious abstention issues raised by such a race to the courthouse.
B. Declaratory Judgment Jurisdiction
This declaratory judgment action was filed pursuant to 28 U.S.C. § 2201 which provides, in a case of actual controversy, that:
*651 any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201 (emphasis added). Pursuant to the statute, federal courts have discretion to decide whether to hear actions that only seek a declaratory judgment. Charter Federal Savings Bank v. O.T.S., 976 F.2d 203, 208 (4th Cir. 1992). The statute does not impose a mandatory obligation upon the federal courts to make such declarations of rights. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).
Although the parties have not addressed the issue of whether the Court should exercise jurisdiction over this matter, a district court's power to raise issues of abstention from jurisdiction sua sponte is well-settled. Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) ; Donohoe Const. Co. v. Maryland-Nat'l Capital Park & Planning Comm'n, 398 F. Supp. 21, 23 (D. Md. 1975) (addressing sua sponte abstention under Declaratory Judgment Act). In deciding whether to exercise discretion over declaratory judgment actions, the Fourth Circuit has required courts to consider:
(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing"-that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.
Mut. Ben. Ins. Co. v. Lorence, 59 F. App'x 595, 597 (4th Cir. 2003) (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994) ) (alterations omitted).[1] The third and fourth factors are of particular concern.[2]
The third factor on entanglement between the state and federal courts because of overlapping issues of fact and law militates against exercising jurisdiction. Penn-America seeks several declarations, which can be categorized as (1) whether Penn-America *652 has any duty to defend or indemnify White Pines under the insurance policy (e.g. Compl. ¶ 27(b) ("Penn-America has no duty to defend or indemnify White Pines in connection with the claims asserted in the Lawsuit because Mr. Polli does not allege, and is not seeking damages, because of a 'personal and advertising injury' offense as that term is defined in the Policy [.]")), and (2) whether Penn-America has any duty to defend or indemnify White Pines in relation to the Virginia worker's compensation scheme (e.g. Compl. ¶ 27(d) ("Penn-America has no duty to defend or indemnify White Pines in connection with the claims asserted in the Lawsuit because the Virginia Worker's Compensation Act, Va. Ann. Code §§ 65.2-100, et seq., provides the exclusive remedy for Mr. Polli's damages.")).[3]
The Fourth Circuit has found that district courts should not decline to assert jurisdiction over cases where an insurer seeks a declaratory judgment that it did not have a duty to defend or indemnify under an insurance policy (i.e. the first category of declarations sought by Penn-America). See Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x 698, 704 (4th Cir. 2009) ; Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 414 (4th Cir. 2004).[4] On this third factor, the Fourth Circuit reasoned that courts would not have to look at the merits of the underlying tort claim. "Under Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.' " Coffey, 368 F.3d at 413 (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990) ). Under this principle known as the "four corners rule," " 'the duty-to-defend question ... [does] not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the plaintiff] has alleged in the state court action with the language of the [provider's] insurance policy.' " Minn. Lawyers, 355 F. App'x at 702 (quoting Coffey, 368 F.3d at 413 ). Therefore, "there is no duty to defend if it appears clearly that the *653 insurer would not be liable under its contract for any judgment based upon the allegations." Minn. Lawyers, 355 F. App'x at 702 (quotations omitted). The duty to indemnify, on the other hand, is different than the duty to defend. It is a narrower obligation. Minn. Lawyers, 355 F. App'x. at 704. "While the duty to defend is based on the allegations in the underlying complaint, the duty to indemnify relies on litigated facts." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 155 (4th Cir. 2009). " 'An insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy[,]' " id. (quoting Bohreer v. Erie Ins. Grp., 475 F. Supp. 2d 578, 584 (E.D. Va. 2007) ), whereas "[t]he duty to indemnify ... refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 257-58 (4th Cir. 2006). The Fourth Circuit, however, found that if the district court concluded there was no duty to defend, there also would not be a duty to indemnify under the policy. Minn. Lawyers, 355 F. App'x at 704 (citing Coffey, 368 F.3d at 413 ). However, if there is a duty to defend, the Court may have to stay the case or hold the issue of whether there is a duty to indemnify in abeyance pending resolution of the underlying state proceedings. See, e.g., Nationwide Mut. Ins. Co. v. Overlook, LLC, 785 F. Supp. 2d 502, 534 (E.D. Va. 2011).
The instant case is different. In addition to seeking declaratory judgment on whether Penn-America has a duty to defend or indemnify under the policy, Penn-America also seeks declarations as to whether it has a duty to defend or indemnify in relation to Virginia's worker's compensation statute. The Court may look solely at the text of the policy and determine, for instance, whether the policy covers worker's compensation. That is, the Court may grant some of the worker's compensation-related declarations sought by Penn-America, e.g. Compl. ¶ 27(d) ("Penn-America has no duty to defend or indemnify White Pines in connection with the claims asserted in the Lawsuit under Coverage A because they are excluded from coverage by the Policy's Workers' Compensation and Similar Laws Exclusion[.]"). However, the Court cannot merely compare the language of the state court complaint in the underlying state tort action with the language of the policy for other declarations sought by Penn-America. For instance, Penn-America asks the Court for a declaration that worker's compensation is the exclusive avenue for Polli to seek relief. Compl. ¶ 27(d). To grant such a declaration, the Court would have to look beyond the allegations in the "four corners" of the Complaint and the general liability insurance policy because the allegations of the state court complaint do not address this issue.
Under Virginia Code § 65.2, a covered employee who is injured may not bring a tort claim against the employer, as the "exclusive remedy is found in the worker's compensation statutes." Napper v. ABM Janitorial Servs.-Mid Atl., Inc., 284 Va. 55, 59, 726 S.E.2d 313, 315 (2012). However, numerous exceptions exist. If the tort, for instance, was not directed to the victim as an employee or because of his employment, the injury does not arise out of the employment and the employee may bring a tort claim. Richmond Newspapers, Inc. v. Hazelwood, 249 Va. 369, 373, 457 S.E.2d 56, 58 (1995). The employee and employer must meet the statutory definitions, Hudson v. Jarrett, 269 Va. 24, 32, 606 S.E.2d 827, 830 (2005) ; for instance, employers with fewer than three employees are not subject to the act, *654 Hoffman v. Carter, 50 Va. App. 199, 210, 648 S.E.2d 318, 324 (2007). Employers must also comply with all the requirements of the statute to enjoy immunity from tort liability. For instance, Virginia Code § 65.2-800 mandates that every employer "shall" secure worker's compensation insurance. Therefore, to grant the declaratory judgment sought by Penn-America, the Court must engage in numerous factual findings: that the underlying tort arose out of the employment relationship between Polli and White Pines, that Polli is an employee as defined by the statute, that White Pines is an employer as defined, and that White Pines complied with the worker's compensation scheme. These factual findings may all overlap with White Pines' defense in the underlying state court case, raising issues of duplicative litigation and preclusion.
Finally, the Court turns to the fourth factor of whether the case is merely "procedural fencing." Unlike the vast majority of cases on this issue, evidence exists on the record that this is the type of race to bring a declaratory judgment in federal rather than state court that the Fourth Circuit sought to prevent by identifying the fourth factor of the Nautilus test. After Penn-America rejected both White Pines' and Polli's demands for coverage, Polli's attorney emailed Penn-America's counsel on September 11, 2018 that Polli would be pursuing a declaratory judgment action, presumably in state court. ECF No. 9, Ex. D. Penn-America then filed the instant action on September 24, 2018 without notice to Polli, and in this Court's Richmond Division. That is, Penn-America raced to file this action in federal court and beat Polli's intended state court action, which also militates against the exercise of jurisdiction.
Because at least two of the Nautilus factors point the Court away from exercising jurisdiction, Plaintiff Penn-America is ordered to show cause why the Court should exercise jurisdiction. If Plaintiff fails to respond, the case may be dismissed without prejudice.
III. CONCLUSION
For the reasons stated above, Defendant's Motion to Set Aside Entry of Default is DENIED, ECF No. 10. In addition, the Court ORDERS Plaintiff to show cause within ten (10) days after the entry of this Order as to whether the Court should assert jurisdiction, and if so, how to proceed with regard to the duty to indemnify in light of the ongoing state court proceedings. Defendant may respond to any submission within seven (7) days of Plaintiff's submission.
IT IS SO ORDERED.

The Supreme Court has overruled Nautilus regarding the standard of review; appellate courts must review a district court's decision to exercise jurisdiction over declaratory judgment actions with the liberal abuse of discretion standard. However, the Nautilus factors remain applicable. Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x 698, 699 n.1 (4th Cir. 2009).

The Court notes, with respect to the second factor, that there is an underlying state court tort claim brought by Polli against White Pines. That the insurer is not a party to a state court claim does not however require asserting jurisdiction. See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 424 (4th Cir. 1998) ("To summarize, we hold that a district court does not per se overstep the bounds of its discretion when it dismisses a declaratory judgment action in the absence of a pending parallel state court proceeding."). Penn-America could be joined to that case under Virginia Code § 8.01-267.5, or a new action may be brought; the same form of declaratory judgment may be sought under Virginia Code § 8.01-184, which gives Virginia courts the power to issue declaratory judgments.

Polli's counterclaim only seeks declarations that Penn-America has a duty to defend and indemnify under the policy (and does not seek any declarations regarding Virginia's worker's compensation scheme). Counterclaim, ECF No. 1, ¶ 24 ("Mr. Polli, in good faith, requests that the Court declare the following: (a) Penn-America has a duty to defend or indemnify White Pines in connection with the claims asserted in the Lawsuit because Mr. Polli is seeking damages because of 'bodily injury' caused by an 'occurrence' [and] (b) Penn-America has a duty to defend or indemnify White Pines in connection with the claims asserted in the Lawsuit because Mr. Polli is seeking damages for bodily injury resulting from the use of reasonable force to protect persons or property.").

Other courts have also noted the conflict between the Fourth Circuit's decisions in Coffey and Minn. Lawyers with the Circuit's "long history of reluctance when it comes to exercising jurisdiction over declaratory judgment actions involving the indemnification of parties to state court actions." Pennsylvania Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc., 2006 WL 569589, at *7 (D.S.C. Mar. 6, 2006) ; see Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992) (cautioning courts against the exercise of jurisdiction over declaratory judgment actions "[a]bsent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law."); Doby v. Brown, 232 F.2d 504, 506 (4th Cir. 1956), cert. den., 352 U.S. 837, 77 S.Ct. 57, 1 L.Ed.2d 55 (1956) (holding that the purpose of 28 U.S.C. § 2201 is not advanced by trying a case piecemeal); see also State Auto Ins. Companies v. Summy, 234 F.3d 131, 136 (3d Cir. 2000), as amended (Jan. 30, 2001) ("The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum.").